[Crim. No. 3551.   Second Dist., Div. One.   May 8, 1942.]

THE   PEOPLE,   Respondent,   v.   GEORGE   NICHOLS, Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Earl Warren, Attorney General, and John L. Nourse, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County defendant was charged in two counts thereof with the crime of presenting false claims for the payment of losses under two contracts of insurance. (Ins. Code, § 556, subd. a.) It will not be necessary to discuss or consider count one, because while the defendant was convicted thereunder, a new trial was granted and the charge dismissed. This appeal is prosecuted from the judgment of conviction and the order denying a new trial as to count two.

Epitomized, the facts in connection therewith are that the defendant was the owner of a drive-in restaurant, known as Dixie Drive-In, located in the town of El Monte, in Los Angeles County. He came to California from the State of Georgia in October, 1940, being accompanied by his brother and the latter's wife. He commenced operation of the above mentioned business in December, 1940, or January, 1941. On February 17, 1941, the Canadian Indemnity Company issued its contract of insurance in favor of defendant covering loss by burglary at the aforesaid premises. The policy limit was $250. On the morning of March 4, 1941, at approximately 2:30 o'clock, W. B. Ambrose, the cook employed by appellant, closed the restaurant, and in accordance with his custom placed the money from the cash register in the oven. He did not count the money, but estimated the amount thereof to be between fifty-five and sixty dollars. Shortly after four o'clock on the same morning defendant reported to the sheriff that his place of business had been burglarized. The investigating officer found that a pane of glass in the back door had been broken, but the glass was resting against the door in such a way that it was necessary to remove the glass in order to open the door. The telephone cash box had been torn from the wall and the receipts taken. The cigarette machine and the coin boxes connected with the automatic phonograph had been broken open and the cash removed therefrom. Defendant informed the officer that the sum of $59.25 in cash had been taken from the oven; that three malt mixers valued at ninety dollars were missing, and that a set of Toledo scales valued at fifteen dollars had been taken, as had been three boxes of cigars valued at six dollars. About ten o'clock on the same morning defendant informed a second investigating officer

that approximately sixty dollars had been taken from the refrigerator in addition to the money taken from the oven. However, defendant stated to this officer that no other articles were missing. A short time thereafter defendant presented to the insurance company a claim under his burglary policy. In the claim defendant listed the following articles as stolen: 3 boxes of cigars, value $6.00; 3 malt mixers, value $84.00; 1 Toledo scales, value $20.00; 1 ceiling fan, value $25.00; 1 eight-slice toaster, value $30.00; 1 coffee maker, value $24.00; 1 neon sign clock, value $54.00; 1 leg of pork, value $3.50; 1 ham, value $3.50; $153.00 in cash.

The policy did not cover cash kept in refrigerators or ovens, and nothing was paid on account of such loss. A dispute arose as to the value of the items reported stolen, and finally an agreement was reached upon a value of $225, which amount was paid to defendant by the insurance company on or about May 3, 1941.

We find in the record testimony given by Mr. Ambrose, the cook, that neither the ham nor the pork reported to be stolen was actually taken. This witness also testified that the remaining articles reported as stolen had never been seen by him on the premises. The testimony of the cook was corroborated in part by the testimony of two witnesses employed by defendant, who likewise testified that they had never seen the articles on the premises.

Taking the witness stand in his own behalf, defendant testified that on the morning of the burglary he left the home of friends in Hollywood around 3:15 o'clock; that en route home he picked up an army corporal as a passenger; that the latter told him that he would like to stop and telephone his camp that he was going to be late. It was this request on the part of his passenger that prompted defendant to stop at his place of business so that the corporal might use the telephone. Defendant testified that when he went in to his drive-in restaurant he noticed that the place had been robbed. He thereupon went to a garage in the back of his place some few hundred feet, awakened his brother, and repaired to the corner, where he telephoned the sheriff's office. The defendant testified that when the officers arrived, his brother as well as the army corporal was at the premises; that the soldier told one of the officers to take his name in case he needed him as a witness, but the soldier was not called to testify at the

trial. The defendant testified positively that all of the articles for which he made claim to the insurance company were actually upon the premises of his place of business, although some of them were not installed, but were kept in a box, and others under the sink and on some shelves which were closed and padlocked; but that the lock was broken the morning of the burglary. Defendant testified that he bought all of these articles in Atlanta, Georgia, in October, 1940, from his brother. At the trial he produced two bills of sale, one of which was acknowledged before and bore the certificate of a notary public in the state of Georgia, in proof of his claimed purchase. Defendant denied that he told the officer that the sum of $59.25 was taken, stating that this was the amount he informed the officer had been taken in as receipts on the night in question, but that there was more than that amount in cash on the premises. In fact, defendant testified that there was $63 in the oven and $100 in the large icebox, making a total of $163. This is the information he claimed he gave to the sheriff.

Defendant produced another witness, who testified that she saw him at a bowling alley conducted by her in Hollywood around three o'clock on the morning in question. She further testified that she had been in the kitchen of defendant's premises and had seen boxes underneath the sink and had in fact seen the electric toaster and three malt mixers. An electrician testified that he had been at appellant's place of business three or four times; that one one occasion he had a discussion with defendant in reference to the installation of an electric fan, and that he had seen the fan in a back room. Another witness for the defense testified that he had aided defendant in moving articles into his place at the time the latter opened the business; that there was a lot of equipment moved in; that he had a recollection of seeing a large toaster, and that while he had seen various boxes around the restaurant he had never had occasion to look into them or to note their contents. Defendant's brother testified that he had formerly been in the restaurant business in Georgia; that he sold this business, and in connection with such sale he sold to his brother the items hereinbefore referred to. He identified a bill of sale and testified that he had aided defendant in bringing the accessories to California and also assisted in placing them in the drive-in restaurant. The wife

of defendant's brother also testified in corroboration of the testimony given by her husband and defendant.

The sole ground relied upon by appellant for reversal of the judgment and order is that the evidence is insufficient to support the trial court's judgment. The principal issue raised against the defendant by the information and the evidence was the truth or falsity of the claim filed with the insurer. The attorney general asserts that the trial court was not required to accept the testimony of appellant and witnesses who corroborated him as to the verity of his filed claim. We are cognizant of the oft-quoted rule which forecloses an appellate tribunal from disturbing the conclusion and inferences arrived at by the trier of facts upon conflicting evidence. Neither are we unmindful of the rule that where the evidence, viewed in one light, creates a hypothesis inconsistent with guilt, and when viewed in another light such evidence is reasonably consistent with guilt, and where the jury, or as in this case the trial judge, rejects the hypothesis pointing to innocence, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the trial court or jury. But it is axiomatic as well that an appellate court may set aside the findings of the trial court when there is no substantial or credible evidence in the record to support them, or where the evidence relied upon by the prosecution is apparently so improbable or false as to be incredible, or where it so clearly and unquestionably preponderates against the verdict or decision as to convince this court that its rendition was the result of passion or prejudice upon the part of the trier of facts. When a case presents any of these features this court deals with it as a matter of law.

Conceding that such a situation can only be presented on appeal in extreme cases, we are convinced that the case at bar does not present the usual and ordinary situation where the evidence was in conflict as to the main or only issue, but on the contrary tenders to us a case where the evidence not only preponderates in favor of appellant's innocence, but where the evidence relied upon by the prosecution to establish guilt falls short of that quantum of reasonableness and substantiality required to satisfy the reason and judgment of those bound to act conscientiously upon it as to the existence of guilt beyond a reasonable doubt and to a moral certainty. In the case now before us the prosecution introduced no

positive, direct or affirmative evidence on any material issue. The most that can be said of such evidence is that it was highly circumstantial and negative in character, consisting in the main of testimony by witnesses to the effect that they had never seen the allegedly stolen personal property upon the premises of appellant's place of business. It cannot be questioned that evidence of a negative character is ordinarily never as satisfactory as that of a positive character.  ▆▆ While it is true that the law makes no distinction between direct and circumstantial evidence in the degree of proof required for conviction, but only requires that proof of guilt be established beyond a reasonable doubt by evidence of the one character or the other, or both, nevertheless in the instant case the unsubstantial and negative evidence of the prosecution, when viewed in the light of the unimpeached oral and documentary evidence presented by the defendant, does not bear that degree of reasonableness and substantiality required to give to it the probative force necessary to sustain the finding of guilt by the trial judge. It must therefore be regarded as amounting to no evidence at all, as a matter of law, sufficient to overcome the presumption of innocence and to meet the burden resting upon the prosecution to establish guilt beyond a reasonable doubt.  ▆▆ Without contradiction the evidence shows that the cook employed by appellant closed the restaurant about 2:30 a.m.; that appellant was then in Hollywood and was en route home between three and four o'clock; that when he arrived at his restaurant appellant was accompanied by an army corporal, the latter of whom was seen by one of the deputy sheriffs shortly after four o'clock. When appellant arrived at his restaurant and discovered the burglary, he immediately telephoned the sheriff's office, and without delay went to the home of his cook, awakened him, and informed him of what had happened at the restaurant. Upon the arrival of the deputy sheriffs appellant reported his loss, and at all times insisted that the articles claimed to have been stolen were in his place of business. Disinterested witnesses testified that they had seen some of the articles upon the premises prior to the morning in question, while a bill of sale dated September 28, 1940, certified by a notary public in the State of Georgia, gave mute but convincing proof that appellant had in fact purchased a considerable portion of the allegedly stolen property from his brother in the last named state. Another bill of sale, which was delivered to the insur-

ance company, and the contents of which were uncontradicted, showed the purchase of other portions of the personal property. Evidence of two witnesses that they had accompanied appellant when he transported the personal property purchased in Georgia from that state to California and lodged it in his restaurant, was uncontradicted and unimpeached, as was the testimony of other witnesses that they had assisted appellant in placing the articles in the restaurant. It is also significant that during the investigation made by the insurance company following the filing by appellant of his proof of loss, none of his employees, who gave testimony only of a negative character at the trial, ever stated to the insurer or to the deputy sheriffs that they had never seen the questioned articles upon the restaurant premises. Further, the insurance company never questioned the presence of the articles upon the premises; the dispute was as to the value thereof, and finally the claim was paid. As we review the evidence in this case, it impresses us with the belief that it is inherently improbable and not reasonably possible that appellant did not own and have upon the premises of his restaurant the property for the loss of which he filed his claim upon his policy of insurance. His conviction must therefore be set aside as unsupported by any evidence of that substantial character required to establish guilt beyond a reasonable doubt of the charge lodged against him.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is, reversed, and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 3, 1942.