[Crim. No. 4150. Second Dist., Div. One. Feb. 18, 1948.]

THE PEOPLE, Respondent, v. JAMES GRAZIANO et al., Defendants; JOHN FRANCIS MAESTEN, Appellant.

Kenneth B. Hughes for Appellant.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

BARTLETT, J. pro tem.—By the information in this case, appellant and James Graziano and Frank A. Serio were jointly accused of committing the crime of burglary, a felony in that they, on the 22d day of December, 1946, wilfully entered the store and room of Ben Millman and Eugene Malone in San Pedro with the intent to commit a theft. The defendants James Graziano and Frank A. Serio pleaded guilty to the crime of burglary in the second degree. At the time of the trial the appellant waived trial by jury and the case was submitted to the court upon the transcript of the testimony given at the preliminary hearing of the case. After the

reading of this transcript the People rested and then Maesten testified in his own behalf. The court found the appellant guilty of burglary of the second degree.

Resolving the facts most favorably to the decision of the court, the record discloses the following: the witness Millman stated that he operated a market at 398 West Sixth in San Pedro; that he had a partner named Malone and that they operated the store on the date claimed in the information; that they closed business at 6 o'clock in the evening and that he had authorized no person to enter the store after closing hours on December 21. He stated that he was not acquainted with and had never seen the appellant Maesten; that he discovered after December 22, the store had been entered through a broken skylight over the men's lavatory. The witness Malone stated that he was a partner and would testify in the same manner as Millman had.

The witness Rockmaker testified that he was the lessee of the vegetable department at this address; that on the 21st of December he closed the premises before he left at about 6:30 p. m.; that he was the last one to leave the store and that he had authorized no one to enter the premises.

Michael Bartolotta testified that he was a bartender and was acquainted with the defendant. That about 10:30 or 11 p. m. Graziano and appellant entered his bar and had a few drinks. Maesten asked to borrow his car and the witness lent him the car and gave him the keys. He did not get the car back until four days later at the police department. He stated that appellant told him they had a couple of girls and they wanted to borrow his car for a little while.

The next witness was T. E. King, who testified that he was a police officer of the city of Los Angeles and that at about five minutes after 2 a. m. on December 22, he had a conversation with appellant whom he found standing at the northwest corner of Sixth and Mesa Streets which is on the other side of the street from the store in question. He asked appellant what he was doing there and appellant told him that he had a boat there and that he was waiting for two friends to come down and that they were going to work over the motor on the boat. At that time the appellant showed him six cards, one of which was a temporary pass of the Consolidated Steel Corporation issued to Captain L. C. Hirsch and representing Coastal Nomad. All of the other cards were made out to Hirsch with the exception of one made out to

L. C. Hirsen, and in regard to that card he was told it was just an error in being made up.

The appellant was released and the witness later returned to the scene about 2:40 a. m. He went to the vicinity of Sixth and Nelson Streets which is about 150 or 200 feet from where he had seen the appellant Maesten. He did not find the appellant Maesten in that vicinity upon his second call. He found two men in the market and arrested Serio and Graziano. He further testified that he went up on the roof of the building at 398 West Sixth Street and noticed the skylight was broken over the rest room.

Officer King testified to conversations which he had with Serio and Graziano. These statements by the other two defendants in no way connected appellant with the crime.

In the course of the officer's search he found Serio's overcoat and hat in the car belonging to Bartolotta. This car was found around the corner from the market. The officer then checked the doors on the building in front and did not find any open. The next witness was also a police officer, H. J. Darcey. Officer Darcey testified that he was the one who arrested the appellant at about 6:30 p. m. at the Cecil Hotel in Los Angeles. At the time of the arrest the appellant had the six cards referred to in Officer King's testimony in his billfold. He asked him where he got the cards and appellant told him they belonged to a friend of his. He stated that he came down to San Pedro with the defendants Serio and Graziano, that he borrowed a car from a bartender and that the three of them came to San Pedro and went to the 22d Street landing to try to locate a boat belonging to Captain Hirsch who was his employer. He got out of the automobile to make this search for the boat and when he came back the other two men were gone. He further stated, the officer testified, that he walked back to the place he had left the automobile and located the car and was waiting there by it for the other two men to appear when he was stopped by a police officer to whom he showed the identifications belonging to Hirsch. He stated he had not seen either Serio or Graziano after they had left him at the pier. The officer then asked appellant whether he had been in the market that night and he said that he had not. The officer further stated that appellant told him that earlier that evening they had been at a drinking party at about 10 p. m. on Witmer Street in Los Angeles.

After the People rested, appellant was called to the witness stand and testified that he had come to Long Beach with Graziano and Serio on December 22; that they had borrowed a car to go to San Pedro; that he got off at the 22d Street docks to look for a boat and when he came back he could not find Serio or Graziano. He stated further that he did have Hirsch's identification in his pocket and that it was his boat that he was going to; that he was acquainted with Captain Hirsch and had permission to go on the boat; that he then started to look for Serio and Graziano and was met by an officer; that he was searched by the officers and they took out his wallet, found Captain Hirsch's identification papers in it; that he did not see the other two defendants after that and had no knowledge that they were going to enter any store and commit burglary and that he did not help them in any way.

The cross-examination was very brief; in fact he was only asked two questions. In spite of the fact that the only time he had been seen that night was 35 minutes before the burglary at a point across the street and 150 to 200 feet away from the premises which had been entered in the rear through the skylight, he was asked as to whether he was acting as a lookout; he said he was not. To impeach his testimony he was then asked if he had ever been convicted of a felony and after a considerable colloquy with the court he stated that he had. That constitutes all of the evidence in the case. It is the appellant's contention that this evidence does not prove the offense charged in the information and that the judgment of the court is contrary to the law and to the evidence.

The respondent contends that the judgment should be upheld on the rule clearly set forth in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], as follows:

"... The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt.' "

That is also the holding in the other cases cited in respondent's brief. There is no doubt of the correctness of this rule. The decision must be based upon facts established by legal and competent evidence or by inferences drawn from proven facts. It is also uniformly held that where there is no evidence, or the evidence is so weak as to constitute no evidence

at all, the question becomes one of law and a finding of guilt will be set aside. This is the effect of the decision of *People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402], *People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814], and also the cases cited in respondent's brief.

Here we have just such a case. There is no conflict in the evidence nor is there anything improbable in the testimony of any witness. There is no evidence in the record of any connection on the part of the defendant with the burglary nor are there any proven facts from which such an inference can be drawn. The most that can be done is to raise a mere suspicion. It was not claimed at the trial nor was there any evidence to the effect that any conspiracy existed between these three men. The last time defendant was seen with either of the other two was three hours before in Los Angeles at Bartolotta's bar. Testimony of the statements of the other two defendants taken in the absence of defendant in no way implicated him. At the time the officers saw appellant that night it was at a position where no reasonable inference could be drawn that he was acting as a lookout. In fact his position 150 to 200 feet away, in front of a place which was entered from the rear, shows that he was in a spot where he could not have been of any possible aid to them had he desired to be. When the officers returned 35 minutes later and found the men in the store, appellant was not seen nor had any warning been given. He did display identification papers which were not his own; they were those of his employer, Captain L. C. Hirsch, who was master of a merchant ship during the war. His connection with Captain Hirsch and his activities in San Pedro were not questioned by the prosecution. He stated, among other things, that the Hirsch boat was docked at the 22d Street pier and that the other two men left him there and he did not see them again. These were the statements testified to by Officer Darcey as having been made to him by appellant on the day the burglary was committed.

The record disclosed that while appellant was testifying, Captain Hirsch was in the courtroom but was not called to the witness stand to rebut any of his statements.

In cases such as this, where the evidence at the most raises a mere suspicion, the courts have not hesitated to reverse the decision of the trial court. Both in *People* v. *Davis,* 210 Cal. 540 [293 P. 32], and *People* v. *Kempley,* 205 Cal. 441

[271 P. 478], the court had before it the question of whether or not the testimony of an accomplice was sufficiently corroborated. The Supreme Court held in each case that it was not. In each of these cases if the testimony of the accomplice were stricken from the record the evidence remaining would still raise a stronger suspicion of defendant's guilt than does the testimony in the instant case.

In *People* v. *Draper,* 69 Cal.App.2d 781 [160 P.2d 80], the facts are succinctly stated in paragraph 1 of the syllabus as follows: "A verdict finding one defendant guilty of burglary was not sustained by evidence that prior to the crime he was riding in an automobile with his codefendants, that he had an opportunity to participate in the commission of the crime, that he was found near the scene of the crime shortly after the burglary, that he ran when approached by police officers, and that he was not a truthful witness." The facts are remarkably similar to the facts in this case, except that here the appellant did not flee, and not only is there no contention that his testimony was untrue but it stands uncontradicted in the record.

Another burglary case where the evidence was held to be insufficient is *People* v. *Tempomgko,* 134 Cal.App. 209 [25 P.2d 245]. As a further example of such holding by the court, we have *People* v. *Casillas,* 60 Cal.App.2d 785 [141 P.2d 768], where the defendant was charged with rape and incest but the testimony by the prosecuting witness was held to be apparently so false or improbable as to be incredible and the court held that in such a case there was no substantial evidence to support the verdict of guilt. In that case the court used this language: "Before we could affirm the judgments of conviction under the state of the record before us we would be compelled to emasculate completely the doctrine of reasonable doubt. . . ." That statement is equally applicable to the record before us here. To deprive a man of his liberty upon mere suspicion and upon such a flimsy showing as is contained in this record, would result in a miscarriage of justice.

The judgment is reversed and the cause remanded.

Doran, Acting P. J., and White, J., concurred.