[Crim. No. 724. Fourth Dist. July 18, 1949.]

THE PEOPLE, Respondent, v. JAMES WILLIAM GIBBONS, Appellant.

Kahn & Block and Henry F. Walker for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of robbery, found guilty by a jury, and given a prison sentence. He has appealed from the judgment and from the order denying his motion for a new trial, contending that the evidence is insufficient, with respect to the identity of the robber, to support the verdict and judgment.

A bartender employed at the Eagles Hall in San Diego was the only witness who testified concerning the actual commission of the robbery. He testified that he started to close the bar at 11:45 p. m. on August 28, 1947; that a few minutes later, as he was taking the money from the second of two cash registers, a man came up behind him, poked something in his back and told him it was a "stick-up," and took a money sack containing about $70 from his hand; that the man ran around the bar and out through the front door; that he got just a glimpse of the man's face at the time of the holdup; that he "got a better look at him when he was leaving"; that he did not move until after the man was gone; and that he then went back to the kitchen and called the police. After stating that he believed that he could identify the person who robbed him he testified very positively, and several times, that the appellant was not that man. When asked to describe the man who robbed him he replied: "He wasn't as big as this boy and much more darker complected." He further testified that he did not remember seeing the appellant seated at the bar between 11:10 and closing time that night.

Two janitors, who were moving an icebox from the barroom to the kitchen about 11:15, also testified. One of them testified that while they were thus engaged the bartender came into the kitchen; that he was rather excited; that he told them that a man had gotten all of his money; that the witness tried to figure out what he was saying; that they finally realized that he had been held up; that they came out into the bar and saw a man just ready to open the front door; that they followed him and as they went out the front door and into the street they saw this man just turning the corner at the end of the block; that they followed at first on foot and then in the witness' car; that the man they were following did not run at any time; that a few blocks away the man hailed a taxi and got in; that they followed the taxi for several blocks; that the taxi stopped and the man got out while they were half a block behind; that he was reasonably sure that the man who got out of the taxi was the same man he had seen get into it;

and that "We lost him entirely after he got out of that taxi." He also testified that while they were moving the icebox he saw a man sitting at the bar, that this was the same man he saw going out of the front door, and that "I would say" that the appellant is the man whom he had seen on these two occasions.

The other janitor testified that when the bartender told them that he had been robbed "We thought he was fooling, but he convinced us"; that they asked the bartender where the robber went and he replied, "He went out the door"; that they went out on the street and a bystander told them that a man had run out and had gone up the street and turned the corner; that they "didn't see anybody" until they reached the corner when they followed a man that was crossing the street; and that they followed this man, as related by the other witness, until they lost him. He further testified that he was not able to identify the appellant as the man they followed.

A musician who was employed in this barroom testified that she quit work at 11:45; that she left about 11:50, went out in front, and sat in an automobile; that she saw a man running out with one hand holding on to his pocket; that this was the same man she had seen seated at the bar before she left; that he ran up the street and turned the corner; that as he turned the corner the two janitors came out and started running after him; that she was pretty sure the appellant was the man she thus saw; that she was sure of it; and that it was possible she might be wrong in her identification. The other musician testified that after they quit work he put his instruments away in a back room; that when he returned to the barroom he saw a man running toward the front door in a "kind of trot"; that he was about 20 feet away from the man; that he followed the man out and went to his car where the other musician was sitting; that he did not see this man after the witness left the building; and that the appellant is not the man he saw leaving the building.

Another witness testified that he saw the appellant seated at the bar at 11:10 that night; that the appellant was still sitting in the same place when the witness left the room at 11:45; that he returned in about eight minutes at which time the appellant was not there; that the bartender was then "raving" about a holdup; and that when he left the room at 11:45 a third man was at the bar besides himself and the appellant. There was also evidence that the appellant had an

apartment about a block from the point where the two witnesses saw some man alight from a taxi, and that he did not stay there that night. Several witnesses testified that he spent that night at a relative's home in Chula Vista. He was arrested about a year later.

The identification of the appellant as the man who was followed from the building by the two janitors is not too satisfactory. One of the janitors was unable to identify him at all. The other said, in effect, that he thought it was the appellant. The one who followed on foot, while the other got his car, had to ask a bystander where the man went. There is a doubt concerning the man he first saw after he turned the corner, and a further doubt as to whether the man who left the taxi near the appellant's home was the same man whom they saw enter it. The musician who was sitting in the car said that the man who came out of the door just ahead of the two janitors was the appellant. However, she qualified this by saying she was "pretty sure" it was the same man and again by admitting that she might be mistaken. The other musician testified that the man he saw running toward the front door was not the appellant. Assuming that the man who was thus followed from the room by the janitors was the appellant, this is far from sufficient to establish, beyond a reasonable doubt, that the appellant was the man who robbed the bartender.

Assuming that the appellant was the man who was thus followed from the building the evidence shows, without dispute, that he left the building after the bartender had convinced the janitors that he had been robbed. The bartender was positive that the appellant was not the man who did it. The uncontradicted evidence is that the man who committed the robbery went out the front door and left the premises while the bartender was still standing at the cash register behind the bar. Thereafter, the bartender went to the kitchen and informed the janitors of what had occurred. From their testimony it took some appreciable time for the bartender to convince them that he had actually been robbed. It was after that that the janitors followed some man, whom one of them believed to be the appellant, from the building. It would not be reasonable to suppose that the man who committed the robbery had immediately left the building and then returned and was again leaving within this short time, and under the circumstances indicated by the evidence. There is also evidence

that there was another man sitting at the bar about the time in question, after the crowd had left, who could have committed the robbery.

The appellant testified that he was not in this barroom on that night. Three witnesses supported his claim of alibi. There was ample evidence to support a finding that he was there about closing time. Probably this fact had a controlling influence upon the jury. The fact that he was present, if true, is not sufficient to show beyond a reasonable doubt that he committed the robbery, under the evidence which here appears. Any inference which could otherwise be drawn from part of the evidence, is not sufficient to overcome other inferences, the direct evidence and the presumption of innocence. (*People* v. *Flores*, 58 Cal.App.2d 764 [137 P.2d 767].) That the circumstances were suspicious must be conceded, but mere surmise and conjecture are not enough.

The appellant further contends that the court erred in that the judge denied the motion for a new trial in the erroneous belief that he was without authority to interfere with the jury's verdict, since the evidence was conflicting. While the record lends considerable support to this contention, it is unnecessary to consider the point under our views with respect to the legal sufficiency of the evidence.

The judgment and order appealed from are reversed.

Mussell, J. concurred.