[Crim. No. 3000.   First Dist., Div. Two.   Oct. 18, 1954.]

THE PEOPLE, Respondent, v. ROBERT RASCON, Appellant.

L. Thomas Hehir, Jr., under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Charles E. McClung, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Defendant Robert Rascon was charged with the crime of burglary and with a prior felony conviction, which he admitted. He was tried before a jury and convicted of burglary in the first degree. He appeals from the judgment and from the order denying his motion for a new trial. (The notice of appeal states an appeal from the order denying his motion for a new trial, as well as from the judgment, but there is no record of any such motion made or denied, and appellant states in his opening brief that no motion was made for a new trial. Therefore this will be considered as an appeal from the judgment only.)

Before considering the merits of the appeal it is necessary to decide the point raised by respondent that the appeal should be dismissed for failure to file the appeal with the clerk of the superior court within the time prescribed by rule 31, Rules on Appeal or "within 10 days after the rendition of the judgment." Judgment was rendered on November 27, 1953; the notice of appeal, dated December 2, 1953, was filed December 9, 1953, two days late. In an affidavit appellant states that after judgment was rendered he was sent to the state prison at San Quentin, that on December 2, 1953, he went to the prison sociologist's office where he was interviewed by Mr. Faustman, that at that time he signed his notice of appeal and was told by Mr. Faustman that "it would be in on time, and that he (Mr. Faustman) said that he would take care of mailing it for me." Defendant avers: "I therefore did all in my power to get my appeal in on time by

giving it to an employee of the State, and I relied on his representation that it would be mailed on time.'' Mr. Faustman, senior sociologist at San Quentin, whose duties consist of interviewing prisoners, preparing case summaries and handling inmate legal matters, in an affidavit declares himself ''at a loss to understand why there should have been the delay evident in this case.'' However, he refutes none of the statements made in appellant's affidavit and concludes his affidavit by stating: ''I can only surmise that due possibly to the indirect method of handling the mail out of the Reception-Guidance Center plus the enormous volume processed through the Mail Office at San Quentin every day it became misplaced, and so did not go out until 12-7-54.''

This case comes within the rule set forth in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], where it was held ''that when appellant timely deposited his notice of appeal with the state's employees as required by the state prison rules, such action constituted a constructive filing of the specified notice.'' This holding is again set forth in the following language: ''So it is here that the state's failure, through its employees, to function in protection of appellant's exercise of his right of appeal, will not deprive him of such right after he has timely performed, so far as the state allows, all the steps required by the state law in perfection of his appeal. Accordingly, we hold that appellant's delivery of his notice of appeal to the state prison employees for forwarding six days prior to the expiration date for the taking of his appeal constituted a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement as contemplated by law.'' (PP. 367-368.) Appellant should not be denied his right of appeal.

Counsel for appellant, assigned by this court, bases his appeal on the single ground of insufficiency of the evidence to support the judgment—more specifically on the lack of proper or sufficient identification to connect the accused with the crime.

On the night of August 6, 1953, the home of Teresa Ortez at 2646A Third Street, San Francisco, was burglarized. Among the articles stolen were bedding, clothes and jewelry. In the house were the children of Mrs. Ortez and a 10½-year-old nephew, asleep on a sofa in the front room. Mrs. Ortez was working and did not return until approximately 1:30. When she did return she discovered the front room window broken, back door open, blood throughout the house and all the bureau drawers open.

Santos Herbert, the nephew asleep in the front room, was awakened by the crash of breaking glass. He thought the time was about 11:30. He testified he observed a bloody hand coming through the window. There was a dim light on in the room. He lay there quietly with one eye partly open, saw the man but was unable to tell what he looked like except that he was short and had dark hair. The man passed through the living room into the kitchen and Santos went back to sleep.

Three days after the burglary Teresa Ortez saw appellant on the street. She sent her husband for the police and went up to appellant and talked with him. While they were talking the police came and arrested appellant. She was not asked and gave no explanation as to her reason for picking appellant as the man who had burglarized her place. However, defendant testified that she saw him on the street and called his name. "I walked up to her and I asked her if she knew me and she said, 'Yes,' . . ., and she said, 'You hang around a certain and certain place,' and I told her 'Yes.' She said, 'You have a bandage on your finger.' I told her, 'no, not now, but I used to have. I hurt my hand.' And before I know it, well, the police car drives up and she says, 'I think this is the man that broke my place.' And I told her, 'well, I don't know nothing about it.' And that was all. That was all the conversation I had with her."

After appellant was arrested, young Santos was called to the police station to identify appellant. There were three or four men in the lineup; the first time Santos picked the "wrong one." He then asked to see the men's hands whereupon he identified appellant; his hand had a cut on it.

Another witness called was Mr. Luis Quintana who operates a restaurant in the near vicinity of the Ortez home. He testified that on the night of August 6, 1953, about midnight the appellant came into his store and asked his wife for a paper bag; his wife thereupon called him and he noticed that appellant had a bandage on his right hand which was stained with blood which appeared fresh.

Minnie Cooke, an employee of Panchita's Café, also located near the Ortez residence, testified that appellant had been in the café in the late afternoon of the day of the burglary; that he had been working for Panchita that day, doing some painting; that several days before the burglary appellant had come into the café with a bleeding hand; said that he had been in a fight; that she had bandaged the hand.

There was no evidence as to whether the stolen goods had been found.

Appellant had a criminal record. This was emphasized in the prosecution's lengthy argument to the jury, going of course only to the credibility of the witness, but undoubtedly leaving an unfavorable impression in the minds of the jury. What defense, if any, the public defender made in his closing argument is not shown as it was omitted from the record. However, judging by his performance in the rest of the trial it was probably of little help to appellant.

The only identification is made by the young boy, Santos. He testified he did not see him well enough to recognize his face, he did not know how he was dressed, that he looked at him out of one partially closed eye and fell back to sleep as soon as the intruder went into the other part of the house. He did see that he had a bleeding hand and on the strength of that he identifies appellant in the lineup, after first picking the wrong man, because appellant had a cut on his hand.

Is this sufficient evidence to find a man guilty beyond any reasonable doubt? Could this case come under the holding in *People* v. *Draper*, 69 Cal.App.2d 781, 786 [160 P.2d 80], where it was said: "The foregoing evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves that he was not a truthful witness. This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him. (Citations)." Or does it come under the holding in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], where it is said: "If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citations)."

We are convinced that the evidence here does not reasonably justify the verdict, but that the evidence merely raises a suspicion of guilt, which is not sufficient to support the verdict under the rule of *People* v. *Draper, supra*.

The appeal from the order denying a new trial is dismissed
The judgment is reversed.

Dooling, J., and Kaufman, J., concurred.