[Crim. No. 5538.   Second Dist., Div. One.   May 15, 1956.]

THE PEOPLE, Respondent, v. JAMES WILLIAM WILKINS et al., Defendants; JOSEPH GRANT, Appellant.

Harold J. Ackerman, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Joan D. Gross, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant, together with James Wilkins, was charged with criminal conspiracy to commit burglary and also the offense of attempted burglary. A jury found defendants guilty on both counts. A motion for a new trial on Count I, conspiracy, was granted. Motion for a new trial on Count II, attempted burglary, was denied. The appeal is from the judgment on Count II, attempted burglary.

The appeal of defendant Wilkins was dismissed under rule 17a.

Both defendants were charged with prior convictions of burglary. The priors were admitted.

It is contended on appeal that the evidence is insufficient to support the verdict.

The offense is alleged to have occurred in Altadena, the attempted burglary of a drug store.

As recited in respondent's brief, "Keith L. Morse, employed as a pharmacist by the McIntyre Pharmacy, closed the store

Friday, April 15, 1955, at about 9:30 p. m. and locked all doors and windows and set the burglar alarm. On returning the next morning shortly past 8:00 a. m., he noticed that the screen door latch had been pulled completely out the screen door and the hook was missing.

"Alexander R. McIntyre, operator of the McIntyre Pharmacy, left about 8:00 p. m. on April 15. He lived right across the street. At 1:00 a. m. the following morning he returned because he heard about four shots, commotion, and automobiles going up and down the street. He went over to the alley behind the pharmacy and 'saw a sheriff's car going around with flashlights.' The deputy sheriffs called his attention to the screen door that had been pulled out. He noted fresh splinters hanging on the threads of the eye of the latch. He saw the hook itself."

John Davis, a deputy sheriff, testified, as recited in respondent's brief, that, "When he first saw Wilkins on the night of the 15th, the latter was driving a car south on Lake Street within a block of the pharmacy with at least 3 persons in it including Wilkins. Davis and his partner, Sgt. Peterson, were parked on Lake Street in Davis' own car. They observed the car approach them from the rear on Lake Street going south, turn east, at which time they started and followed it as it turned north two blocks later. At this time Davis and Peterson turned around and went back up the street, and made a circle of the town and parked on Mariposa, between Lake and El Molino Streets. Shortly thereafter the same 1950 Cadillac, which he had observed Wilkins driving, pulled away from the intersection of Lake and Mariposa. A man walked around the corner and up to the front door of the McIntyre Pharmacy, cupped his eyes in his hands, and peered through the glass into the store. Then he walked down the face of the store to the other door, stopped, hesitated, and kept on walking past them. As he approached the intersection, the same Cadillac pulled up beside him and he got in. Davis couldn't identify this individual and he was referred to as 'John Doe.'

"They started following the Cadillac again, when it parked. Shortly thereafter it moved and they lost it, but saw it again in the same area. They parked their car and took their equipment, including a walkie-talkie radio, and lights, and went through the backyards of a couple of buildings in the block which is north of the location where the pharmacy is located, and came out in the alley behind the McIntyre Drug Store. There was a slight hill across the alley from the

pharmacy and a large incinerator nearby. Davis walked down the alley and, on checking both of the back doors of the pharmacy, including the screen door, found them locked and secure. There was some activity in a bakery down the alley.

"He and his partner were seated on the hill across from the pharmacy after they had explored the surrounding locality when Davis saw the same Cadillac. Davis and his partner parked in the area above the alley. They heard two car doors open and two close, an engine stop, and what sounded like a trunk lid open and close, then some mumbling and scuffling of feet leaving the car, heading toward the rear of the pharmacy. From where they were, they could not observe anyone in the alley. Later Davis heard what he believed to be a door 'pop,' as though someone had jerked it, and a door close.

"A minute or so later, he heard sounds coming across the alley and two persons climbing the embankment. They crawled right toward him. When they were 5 feet from him, one suddenly exclaimed, 'Gees, look who's here!', and immediately turned and scrambled down off the hill. He recognized them both at this time .

"They shouted for them to stop, and Wilkins stopped at one of the rear doors of the pharmacy. Grant was still running toward the car. The car started up and drove out of the alley without lights. As soon as the car started, Grant stopped. There were shots fired at the car.

"Both Wilkins and Grant were then placed under arrest. Lying in the alley near one of the rear doors of the pharmacy was a bag of tools containing keyhole type saws, a crowbar, two sledge hammers, a couple of chisels, a couple of drift punches, two pairs of canvas gloves, and a brace and bit. These tools were identified as burglar tools by Davis who had worked burglaries for three years and investigated many. He hadn't seen the bag in the alley before Wilkins and Grant arrived. At this time the screen door that Davis had found secure shortly before was slightly ajar."

"The hill across from the pharmacy," above referred to, was about 10 feet high.

The defendants denied any attempt to burglarize the drug store and testified that they went into the alley to urinate. There was no evidence whatever of guilt. Of course there was probably ground for suspicion but that, as a matter of law, is not sufficient. The doctrine of reasonable doubt is

still in effect. In *People* v. *Draper*, 69 Cal.App.2d 781, at 786 [160 P.2d 80], on that subject is the following:

"The foregoing evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves that he was not a truthful witness. This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him. (Cases cited.)" Quoted in *People* v. *Rascon*, 128 Cal.App.2d 118 at 122 [274 P.2d 899]. See *People* v. *Smith*, 128 Cal.App.2d 706, 709 [275 P.2d 919]. *Cf.*: *People* v. *Norris*, 125 Cal.App.2d 855 [271 P.2d 59]; *People* v. *Colletta*, 100 Cal.App.2d 1 [222 P.2d 922]; *People* v. *Platnick*, 71 Cal.App.2d 767, 770 [163 P.2d 766].

Appellant's explanation of the verdict is supported by the record and is correct as a matter of fact and of law. It follows: "Appellant respectfully submits that an analysis of the evidence herein leads to the conclusion that there is evidence that an entry of the pharmacy by the rear door was attempted, but that there is no evidence that appellant was the one who attempted such entry. The best that can be said for the People's case is that there is a suspicion of the same, nothing more. In the light of the failure of the People to prove their case to the extent that the law requires in order to sustain a conviction of guilty, even when examining only the evidence most favorable to the respondent, it may be concluded that the verdict of the jury was based upon an improper consideration of the evidence. Appellant respectfully submits that the prior offense of the defendant in 1948 having been for burglary, the jury gave undue and improper consideration to such factor in a case involving a similar charge."

The judgment is reversed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 28, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 12, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.