[Crim. No. 7484.   Second Dist., Div. Three.   June 27, 1961.]

THE PEOPLE, Respondent, v. KENNETH BLACKWELL
et al., Defendants; ROBERT DALTON FREY, Appellant.

Ellery E. Cuff, Public Defender, J. Stanley Brill and James L. McCormick, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

VALLÉE, J.—In count I of an information defendants Blackwell and Frey were accused of armed robbery of Igor March, clerk of the Twilighter Motel, 4300 Wilshire Boulevard, Los Angeles, on April 28, 1960. In count II defendants Blackwell and Johnson were accused of armed robbery of John Delbis, clerk of the Cloud Motel, 3400 West Third Street, Los Angeles, on April 26, 1960. In count III defendant Blackwell alone was accused of armed robbery of James Russell at a third separate and distinct location on March 13, 1960. Blackwell and Johnson were each charged with a prior felony conviction and with having served a term of imprisonment.

Blackwell pleaded guilty to all counts, leaving Frey alone to be tried on count I and Johnson alone to be tried on count II. A jury found both Frey and Johnson guilty as charged. New trials were denied and Frey and Johnson were sentenced to state prison. Frey, sometimes referred to as defendant, appeals from the judgment and the order denying a new trial.

Igor March, night clerk of the Twilighter Motel in Los Angeles, testified: About 2 a. m. on April 28, 1960, two men appeared at the registration desk. One of the men pulled a gun and said, "Stay where you are." Blackwell asked, "Where is the money?" Blackwell looked around, found $5.00, and took it. March noticed a hotel tag with number 608 and "Lanker" on it hanging from Blackwell's pocket. March testified he could not identify the man with Blackwell; the other man had a hat on and a green suit; the other man had the hat pulled down to his chin; he could see his chin only; he "couldn't see anything"; from the nose down, that part of the face, looked familiar. The man with Blackwell had his hand on the counter "not more than 30 inches" from him and he did not notice any tattoos. The other man said, "Give us five minutes," and they left; as the men went out they slammed the door; he went out and saw a dark green car pull away; he called the police and told them about the tag.

A few days after the robbery March was taken to a police lineup. He picked Blackwell out of the lineup. March testified: "Q. Did you see Mr. Frey in that lineup? A. Well, as I said, I just couldn't. Q. In the lineup at the time you picked

out Mr. Blackwell here —— A. I couldn't, know. I couldn't identify because all men were without hats and this other man during the holdup had his hat on and I just couldn't identify him. . . . Q. At the preliminary hearing you saw three men seated at a counsel table like the defendants are now? A. That is right. Q. At that time were you called upon to look at Mr. Frey, examine him? A. They asked me to but I couldn't identify. Q. At that time you also said that he looked similar but you couldn't tell? A. From here down, but I wasn't sure. . . . Q. The District Attorney asked you if you had testified that Mr. Frey resembled the man? A. As I said, from here on, his chin, but still I wasn't sure because I didn't think it was enough identification on the chin. . . . Q. Even after seeing Mr. Frey at a lineup and at the preliminary hearing and here in court you can't honestly say you can identify him? A. No, sir.''

John Delbis, a clerk in the Cloud Motel in Los Angeles, testified: About 1:20 a. m. on April 26, 1960, Blackwell and Johnson entered the motel office; he was forced to turn over about $165 to them at the point of a gun.

Grady Stepp, night manager of the Lankershim Hotel in Los Angeles, testified: In the early morning hours of April 28, 1960, he was contacted by the police who gave him a description of some men to look for; the officers directed his attention to room 608; he checked his records to ascertain who was registered in that room; about 4 a. m. Blackwell, Johnson, and Frey entered the hotel; Blackwell and Frey went to a cigarette machine; Johnson went to the elevator, which ascended to the seventh floor; later Blackwell and Frey entered the elevator; it stopped at floors six and seven; he notified the officers; the officers went to room 608, returned, and asked him to go to the room to find out if the person there was one of the men who had entered the hotel; he accompanied the officers to 608; Blackwell was in the room.

There was evidence that later that morning the officers arrested Johnson and Frey in room 623. Frey was asleep; the room was searched immediately; no gun, bullets, or rolled coins were found either in the room or on Johnson or Frey; two or three half-dollar pieces were found. When Blackwell was arrested the officers searched room 608 for a gun but found none. The day following the arrest an officer searched room 608 again. He found an unloaded gun and three rounds of live ammunition which fit the gun. The registration card for the persons in room 608 showed the names and address

Kenneth and Barbara Stokes, 210 Robinson, Pittsburg, California, date of arrival April 27. The registration card for the persons in room 623 showed the names and address Robert Johnson and Wayne Phillips, 810 Commerce Street, Houston, Texas, date of arrival April 27.

Frey testified. He is 21 years of age; he is a tree surgeon; he had been in California since October 2, 1959; shortly after he came here his heel cord was cut; he was in a hospital and then on crutches until March 15, 1960; at the time of his arrest he was unemployed; he had tattoos on his hands and arms since 1954; he did not own a hat or a green suit; he was wearing brown slacks and a brown coat the night before he was arrested; he met Blackwell two weeks before, and Johnson a day or two days before his arrest; he registered at the Lankershim Hotel on the afternoon of April 27 under the name Wayne Phillips because he had lost his wallet and had no "ID"; he had a fishing license from 1957 with the name Wayne Phillips which he had found; he thought if he were asked for identification he could show that; Johnson was going to pay for the room and told him to stay there because he had no place to stay; on the night of April 27, 1960, he went to Hollywood with Johnson where they went from bar to bar, drinking; they went to seven or eight bars and had drinks in all of them; they left for Hollywood "anywhere between 9:30 and about 10:00 or 11:00. Somewhere along in there"; they returned to downtown Los Angeles between 2 and 3; they then went to Cooper's Coffee Shop, about Fifth and Broadway, and stayed there about an hour; on the way to the hotel they met Blackwell about Sixth and Broadway and walked to the hotel with him; he believed he went up on the elevator with Johnson and by mistake went to the seventh floor and walked down to the sixth; he was sleeping in the room when something hit him on the knee "real hard" and he got out of bed; when he raised up there were shotguns pointed at his head; one of the officers said, "This has got some buckshot in it and I will blow you through the bed"; he held his hands up and told the officers he did not have anything; the officers said something about a robbery and asked him where he was last night; he told them he was out drinking, and they told him, "We know where you were"; one of the officers said, "He is going to lie to you anyway. Go and get some clothes on"; he had about $1.50 or $2.00 on him when he was arrested; he had never seen Igor March before the

preliminary hearing; he had never been to the Twilighter Motel or in any building at 4300 Wilshire Boulevard, Los Angeles.

Blackwell testified he committed the Twilighter and Cloud Motel robberies with one Johnny Massanetti; Frey did not help him hold up the Twilighter Motel. Johnson did not testify.

█ Frey contends the evidence is insufficient to justify the verdict in that there was no evidence he participated in the robbery of Igor March. The point is good. █ It is axiomatic that a reviewing court may set aside the judgment of a trial court when there is no substantial or credible evidence in the record to support it. When a case presents this feature, this court deals with it as a matter of law. (*People* v. *Nichols,* 52 Cal.App.2d 31, 35 [125 P.2d 513].)

█ Frey was not identified as one of the robbers of Igor March or of the Twilighter Motel. The testimony of March did not amount to an identification. March testified the man with Blackwell had his hand on the counter "not more than 30 inches" from him and that he did not notice any tattoos. Frey had tattoos on both hands. Room 623 at the Lankershim Hotel was searched thoroughly. No loot, no weapon, and none of the clothing allegedly worn by the man with Blackwell was found on Frey or in room 623. While one of the officers said he believed there was a hat "present," he did not know what was done with it and there was no evidence that if a hat was found it fitted Frey or that it was his hat. A fair inference is that if a hat had been found and it could have been in any way connected with Frey, it would have been introduced in evidence. (Code Civ. Proc., § 2061 (subds. 6, 7).) Nothing at all was found connecting Frey with the robberies.

At best the evidence merely shows that Frey associated with Blackwell and Johnson. It falls far short of the quantum necessary to overcome the presumption of innocence and to meet the burden resting on the prosecution to establish guilt beyond a reasonable doubt. █ While the fact that an accused has an opportunity to commit the crime with which he is charged may be a circumstance from which guilt may be conjectured, it is nevertheless an established precept of law that an incriminating circumstance from which guilt may be inferred must not rest on conjecture. And by the same rule it is not permitted to pile conjecture on conjecture. (*People* v. *Flores,* 58 Cal.App.2d 764, 770 [137 P.2d 767].)

That the circumstances were suspicious may be conceded, but mere surmise and conjecture are not enough.

The evidence in the present case is of a much flimsier character than that in *People* v. *Flores, supra, People* v. *Lewis,* 81 Cal.App.2d 119, 124-125 [183 P.2d 271], and *People* v. *Gibbons,* 93 Cal.App.2d 28 [208 P.2d 411], in which it was held as a matter of law there was no evidence, substantial or otherwise, justifying an inference of the defendant's guilt, and that therefore the evidence of guilt was legally insufficient.

As said in *People* v. *Flores, supra,* 58 Cal.App.2d 764, 770: "No man's liberty should be taken from him upon such a flimsy showing as characterizes the evidentiary features of this case."

The People say that assuming the identification of Frey is inadequate as a matter of law, there was proof of a conspiracy to rob motels and hotels. The point is entirely without merit. ██ The gist of a conspiracy is an unlawful agreement to commit an offense and an overt act done in furtherance of the agreement. (*People* v. *Curtis,* 106 Cal.App.2d 321, 325 [235 P.2d 51].) There was no evidence, direct or circumstantial, that Frey ever made any agreement with anyone to commit any offense. ██ " 'Conspiracies cannot be established by suspicions. There must be some evidence. Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense.' " (*Davis* v. *Superior Court,* 175 Cal.App.2d 8, 23 [345 P.2d 513].)

The judgment and order denying a new trial are reversed.

Shinn, P. J., and Ford, J., concurred.