[Crim. No. 9835.    Second Dist., Div. Four.    Nov. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE JACKSON, Defendant and Appellant.

James E. Patterson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Robert Lee Jackson and Earl Tate were charged by information with attempted burglary, in violation of sections 459 and 664, Penal Code (Count I); and with grand theft (auto) in violation of Penal Code section 487, subdivision 3 (Count II); and with a violation of section 10851 Vehicle Code (Count III). Jackson was also charged with two prior felony convictions, each for violation of section 503 (now 10851) Vehicle Code; Tate was charged with a prior felony conviction of the crime of robbery. Counts II and III were dismissed by motion under Penal Code section 995. Each pled "Not Guilty" to Count I. Jury was waived and the case was submitted on testimony contained in the transcript of the preliminary hearing. Jackson was found "Guilty" as charged in Count I; the priors were found true, probation was denied, and he was sentenced to state prison for the term prescribed by law. Jackson appeals from the judgment of conviction.

### Statement of Facts

Howard A. Grohe had an appliance business at 584 East Fifth, Pomona. He closed and locked the store on the evening of August 27, 1964; when he returned the following morning one door had been drilled and jimmied; there was a hole 4 to 5 inches in diameter and about a half inch deep near the lock on the right-hand door. That door led directly into a sales room where there were new television sets, appliances, radios, and refrigerators, worth about $14,000. There were wood shavings on the floor by the door and one door appeared to have been jimmied by a crowbar or a heavy screwdriver of some sort. The door had been in good condition when Mr. Grohe had left on the day before. Appellant had no permission to enter the store.

About 11 p.m., a neighbor, Mrs. Shandor of 561 East Sixth Street in Pomona, noticed three men in a light colored automobile stop in front of her home. Her residence is located "caddy-corner" [sic] from the appliance store. It was dark but Mrs. Shandor could tell that at least two of the men "were colored" and that the driver was heavy set and one passenger was slender and one wore a light colored shirt and light pants. Two of the men took an object out of the car which was about a foot long and was wrapped in cloth. Mrs. Shandor then heard noises as though someone was trying to pull doors apart or loosen boards. The car left the area and came back at about 11 p.m. or 11:15 p.m. Mrs. Shandor saw two men get out and then she heard more noises. Then she

saw the two men come back and drive away. Mrs. Shandor saw the car for the third time, and after a while the police came and an officer talked to a "tall, thin, slender" man. The police and the tall, slender man in the light colored car drove away.

In the early hours of the next morning, Officer Muriset had a conversation with codefendant Tate in which the officer gave Tate directions to the freeway. About 20 minutes later, Officer Muriset saw Tate driving the same vehicle in the same area. Tate was alone, and Officer Muriset questioned him as to why he was in the area. Tate said he had left appellant Jackson off at the Tailor-Made Donut Shop to get a cup of coffee. Officer Muriset contacted Officer Adams by radio and asked him to see if appellant Jackson was in the donut shop. Appellant arrived with Officer Adams, and upon questioning the appellant, he stated that he was enroute from San Diego where he had tried to visit his sister, but had been unable to find her. He stated that on the way back they had a flat tire in this area and they had stopped to fix it and he had gone for a cup of coffee while Tate stayed behind to fix the flat tire.

Officer Muriset obtained Tate's permission to search the car Tate was driving, and the officer found two pair of gloves, a brace, and a bit with wood shavings on it.

Officer Adams examined the appliance store and saw that the door had been pried, and it had been bored with some type of bit. When the bit found in Tate's car was tested against the hole in the door, it appeared to fit and be the same size.

No evidence was presented by appellant, and he did not take the stand. Counsel stipulated to "probable cause" for the search of the car.

Appellant contends that the evidence is insufficient to support the verdict, and also that the appellant was not advised of his constitutional rights.

■ In examining the issue of the sufficiency of evidence to support the verdict, the court's function is not to reweigh the evidence, but to determine whether or not there were sufficient facts to warrant an inference of guilt. The evidence must create more than a mere suspicion of guilt.

The appellant cites *People* v. *Graziano* (1948) 83 Cal.App.2d 701 [189 P.2d 518]. In that case, the evidence placed appellant 150 or 200 feet from the scene of the burglary about 35 minutes before its commission, and it also placed the appellant, several hours before the burglary, in the company of the co-

defendants who were arrested inside the building. Appellant denied his guilt, and it was brought out that he had previously been convicted of a felony. The court in that case indicated that such evidence creates a mere suspicion of guilt. Appellant Jackson in the instant case admits having been in the same car as Tate earlier in the evening; he was not picked up near the scene of the crime but in a coffee shop. This evidence seems to create a mere suspicion of guilt rather than an inference of guilt.

In the case of *People* v. *Draper* (1945) 69 Cal.App.2d 781 [160 P.2d 80], the appellant had been riding in an automobile with his codefendants prior to the crime, he could not account for his time other than stating he was driving with his codefendants to Indio, he ran away in order to avoid the police, he was found near the scene of the crime shortly after the burglary, and he was not a truthful witness. The court said (at p. 786):

"The foregoing evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves he was not a truthful witness. This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him."

It appears that the evidence against the appellant in the *Draper* case is stronger than the evidence against appellant Jackson in the instant case, and in the *Draper* case the evidence was found to create no more than a suspicion of guilt.

■ Some evidence of guilt of burglary may be furnished by the unexplained possession of burglary tools which, according to expert testimony, were used to commit the crime. (*People* v. *Nichols* (1961) 196 Cal.App.2d 223 [16 Cal.Rptr. 328].) However, in the case before the court the burglar's tools were found in the car driven by the codefendant Tate; they were not found in the possession of appellant Jackson. Further, unlike the case of *People* v. *Barnum* (1957) 147 Cal.App.2d 803 [305 P.2d 986], where the defendant's clothes had peculiar debris associated with the crime itself, appellant Jackson was confronted with no such similar physical evidence,[1] nor was appellant implicated by finger-

---

[1]The issue as to Tate's guilt is not before us. Therefore we merely note that the evidence in this record shows no more than that the objects

prints or possession of stolen property. (*People* v. *Wells* (1960) 187 Cal.App.2d 324 [9 Cal.Rptr. 384].)

Appellant also contends that statements made by him to the police officers were received in evidence in violation of the rule announced in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Admittedly he was in custody and the record is silent as to any warning of constitutional rights. However, since the case was heard long before the decision in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], as well as before the decision in *Dorado,* understandably the record gives little help in deciding either the extent of suspicion which had focused on Jackson when the statements objected to were made or whether those statements were the result of investigatory or of accusatory interrogations. Since the case must be reversed, we do not here consider these problems. In the event the case is retried, counsel and the court may explore the circumstances surrounding Jackson's discussions with the police in the light of *Escobedo* and *Dorado* and the subsequent cases in this state construing and applying the rules therein pronounced.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

---

found in the car *might* have been used in the attempted burglary; we are not told that the wood shavings matched the wood in the door, or that any pry bar was found which fitted the marks on the door.