[Crim. No. 6440.   First Dist., Div. Four.   Aug. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID A. BAMBER, Defendant and Appellant.

Norman Spellberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

RATTIGAN, J.—A jury found appellant guilty of the burglary (Pen. Code, § 459) of the Old Clock Restaurant in Monterey. He appeals from the judgment of conviction.

The restaurant was burglarized during the night of January 1-2, 1967, between the hours of 11:30 p.m. and 3:30 a.m. Three days previously, at 3:30 a.m. on December 29, Officer Gregg of the Salinas Police Department saw a 1957 Cadillac being driven in that city. The officer stopped the Cadillac because of a defective taillight. The driver, Benny Joe Freeman, was alone in the car. While attempting to repair the light, Freeman opened the trunk of the vehicle. Officer Gregg saw several tools in the trunk, including a sledge hammer, a miner's pick, a chisel and a "center punch." The officer examined the tools and made a small "X" mark on the sledge hammer.

On the night of the burglary, shortly after 1 a.m. on January 2, Officer Mason of the Salinas Police Department stopped the same Cadillac in Salinas. The vehicle was occupied by appellant and Freeman, who was driving. The officer permitted the pair to go on their way between 1:15 and 1:20 a.m.

Two hours later, at 3:15 a.m. on January 2, appellant was seen in Monterey on foot and in the vicinity of the Old Clock

Restaurant. Officer Davidson of the Monterey Police Department, patrolling the area in a police car, saw appellant "stepping onto the sidewalk" at the rear of a motel. The location of this motel with reference to the Old Clock Restaurant is not entirely clear in the record on appeal,[1] but both are apparently on the east side of Abrego Street in Monterey. Officer Davidson estimated the distance between them as 250 yards; another officer estimated it at 150 yards. Denny's, an all-night restaurant, is located between them.

Officer Davidson called appellant over to the police car at sight and asked him what he was doing coming out from "behind the motel. . . ." Appellant said that he had come out of Denny's parking lot, and not from "behind the motel." The officer asked for and was told appellant's name, and drove on.

In his rear-view mirror, Officer Davidson saw appellant crossing Abrego Street behind the police car. The officer made a U-turn and drove back to the motel, but could not locate appellant. He then radioed his station and was joined in the area by Detectives Bumpas and Shimmon. Officer Davidson commenced a security check of nearby buildings; the detectives, who had a description of appellant, attempted to find him in the neighborhood.

The burglary was discovered when Officer Davidson, checking the rear of the Old Clock Restaurant at 3:30 a.m., found a safe outside the building (on the side away from Abrego Street). Further police investigation indicated that entry to the restaurant had been forced by jimmying open a rear door. The safe had been removed from the restaurant. The safe was apparently heavy; whoever moved it had done so by sliding it the length of the restaurant along a thick path of sugar and salt which had been sprinkled on the floor. It had then been pushed down a flight of rear steps to the point where Officer Davidson found it outside the building. The safe was badly battered, but it had not been opened. (One of the owners of the restaurant testified that the safe had been locked when the place was secured at 11:30 p.m.)

[1] The relative locations of each were depicted to the jury on a blackboard diagram to which several witnesses referred and contributed during the trial. The diagram was admitted in evidence but was apparently not photographed: the exhibits in the record on appeal do not include a replica. Several photographs among the exhibits show the area around the motel mentioned in the text, but they are small snapshots and the Old Clock Restaurant cannot be seen in any of them. For these reasons, our impression of the case's geography has been somewhat laboriously—and imperfectly—reconstructed from verbal references in the trial testimony.

Near the safe, the police found two large sledge hammers, a small one, a chisel and a screwdriver. Detective Bumpas testified that the screwdriver appeared to have been ''of the same size'' as the pry marks in the jimmied door of the restaurant. Officer Gregg testified that one of the large sledge hammers was the one he had marked in the trunk of Benny Joe Freeman's Cadillac in Salinas on December 29, and that the other tools found by the safe were similar in appearance to the others he had seen in the trunk.

At 4 a.m. on January 2, Officers Davidson and Stanley stopped Benny Joe Freeman's Cadillac in Monterey. Freeman was driving; appellant was with him. Three police officers estimated the distance between the Old Clock Restaurant and the place where the Cadillac was stopped as eight blocks, one mile and two miles, respectively.

Appellant and Freeman were arrested and the Cadillac was searched. The officers found a flashlight and a pair of gloves in the back seat, and a miner's pick and a ''drift punch'' (or ''drift pin'') in the trunk. These items were left in the Cadillac, which apparently remained in police custody: none of the items was produced at the trial.

The safe and the interior of the Old Clock Restaurant were dusted for fingerprints. Some prints were found, but they were not appellant's or Freeman's. The tools found near the safe were dusted, but yielded no identifiable prints. The pick and punch which were in the trunk of the Cadillac were not dusted for fingerprints. The flashlight found in the vehicle was not dusted (and in any event one of the arresting officers used it during the search of the Cadillac; he did not have his own flashlight with him).

Footprints were found near the safe behind the Old Clock Restaurant. One of the detectives seized appellant's shoes, but did not attempt to match them with the footprints. The detective testified that the footprints were not sufficiently distinguishable to permit this. He took the shoes to have them tested for the presence of salt. They were sent to C.I.I. for this purpose. C.I.I. is an ''agency of the State which will make chemical and physical tests'' in local police investigations.[2] The detective testified that he had seen no findings from a test of the shoes for the presence of salt, and no evidence on this subject was offered from any source. At the time of trial, it

[2]The reference, unmistakably, was to the State Bureau of Criminal Identification and Investigation. (Pen. Code, § 11000 et seq.)

was not known whether the shoes themselves had been returned by the C.I.I.

Appellant gave this version of his activities on the morning of January 2: After he and Freeman had been stopped in Salinas, Kenneth Pierce drove him to Carmel to look for his wife. Freeman was to pick him up in a couple of hours. Unable to find his wife in Carmel or elsewhere in the Monterey area, appellant had Pierce drop him at Denny's Restaurant at 3 a.m. He encountered Officer Davidson when he left Denny's 10 minutes later. Shortly thereafter, Freeman picked him up on Abrego Street and drove him back to Carmel. They were returning through Monterey when the police stopped and arrested them.

In his testimony appellant denied any involvement in the Old Clock Restaurant burglary. Kenneth Pierce, called for the defense, corroborated appellant's account of the events of January 2 up to the point where he had dropped appellant at Denny's.

Convicted upon the foregoing evidence, appellant contends here that the evidence is insufficient to support the conviction. His contention must be sustained: we reverse the judgment.

On appeal, the evidence is to be viewed in the light most favorable to the party prevailing in the trial court. It is for the trier of fact to determine the credibility of the witnesses and the reasonable inferences to be drawn from the evidence. (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Gaeta* (1960) 178 Cal.App.2d 830, 832 [3 Cal.Rptr. 384].) Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty* (1953) 40 Cal.2d 876, 885 [256 P.2d 911] ; *People* v. *Newland, supra*; *People* v. *Reed* (1966) 241 Cal.App.2d 102, 105 [50 Cal.Rptr. 300].)

But evidence which merely raises a strong *suspicion* of the defendant's guilt is not sufficient to support a conviction. (*People* v. *Briggs* (1967) 255 Cal.App.2d 497, 500 [63 Cal.Rptr. 111] ; *People* v. *Rascon* (1954) 128 Cal.App.2d 118, 122 [274 P.2d 899].) Suspicion is not evidence: it merely raises a possibility, and this is not a sufficient basis for an inference of fact. *People* v. *Briggs, supra,* at p. 500; *People* v. *Tatge* (1963) 219 Cal.App.2d 430, 435 [33 Cal.Rptr. 323].)

■ A review of the evidence in the present case indicates only four factors which could connect appellant with the burglary. One is the set of tools found by the safe. They appear to connect Benny Joe Freeman with the crime. But when Officer Gregg saw them in the trunk of the Cadillac on December 29, they were in Freeman's sole possession. There is no evidence that appellant ever had them in his possession or knew of their existence, and they yielded no fingerprints. Accordingly, they did not link him to the burglary.

Substantially similar facts existed in *People* v. *Jackson* (1965) 238 Cal.App.2d 477 [47 Cal.Rptr. 860]. In that case a store was forcibly entered by two men using heavy tools. The police stopped Tate, driving an automobile, shortly after the burglary. The tools used in the crime were found in Tate's car. Jackson had been in the car with Tate earlier in the evening, and the two were still in contact when Tate was arrested. Both were charged with the burglary. Jackson was convicted and appealed.

· Jackson's conviction was reversed. The court stated: "Some evidence of guilt of burglary may be furnished by the unexplained possession of burglary tools which . . . were used to commit the crime. [Citation.] However, in the case before the court the burglar's tools were found in the car driven by the codefendant Tate; they were not found in the possession of appellant Jackson. Further, unlike the case of *People* v. *Barnum* (1957) 147 Cal.App.2d 803 [305 P.2d 986], where the defendant's clothes had peculiar debris associated with the crime itself, appellant Jackson was confronted with no such similar physical evidence, nor was appellant implicated by fingerprints or possession of stolen property. [Citation.]" (*People* v. *Jackson, supra,* 238 Cal.App.2d 477 at pp. 480-481.)

■ . Another possible link in the present case was the pair of tools found in the trunk of Freeman's Cadillac when he and appellant were arrested. Since these tools were not used in the burglary, they did not connect appellant with it: but his fingerprints on them might have connected him with the trunk and, conceivably, through the trunk, to the burglary tools which inferably came from it and were found by the safe. But because the pick and punch were not tested for fingerprints, this possible connection fails as well.

The other two elements in the evidence which could connect appellant with the burglary are the facts (1) that, if it be assumed that Freeman was involved in the crime, appellant

was with him no more than two hours before it was discovered and again 30 minutes later, and (2) that appellant had the opportunity to participate because he was in the area at the time. Several decisions, however, direct the conclusion that these facts in combination do no more than generate suspicion which will not support the conviction.

In *People* v. *Blackwell* (1961) 193 Cal.App.2d 420 [14 Cal. Rptr. 224], Frey was seen associating with Blackwell after a robbery with which both were charged and to which Blackwell pleaded guilty. The robbery victim could not identify Frey, who was convicted by a jury. The appellate court reversed upon the stated grounds that, failing an identification, nothing connected Frey with the robbery except his association with Blackwell and that this was not sufficient "to meet the burden resting on the prosecution to establish guilt beyond a reasonable doubt." (*Id.*, p. 424.)

The *Blackwell* court further stated (*id.*, pp. 424-425) that "While the fact that an accused has an opportunity to commit the crime with which he is charged may be a circumstance from which guilt may be conjectured, it is nevertheless an established precept of law that an incriminating circumstance from which guilt may be inferred must not rest on conjecture. And by the same rule it is not permitted to pile conjecture on conjecture. [Citation.] That the circumstances were suspicious may be conceded, but mere surmise and conjecture are not enough."

In *People* v. *Graziano* (1948) 83 Cal.App.2d 701 [189 P.2d 518], three defendants were charged with burglarizing a market. Graziano and Serio pleaded guilty; Maesten was tried and convicted. Maesten had been seen in a bar with Graziano at 11 p.m., and a police officer met and interrogated him 150 or 200 feet from the market at 2 a.m. The same officer apprehended Graziano and Serio in the course of the burglary 40 minutes later. The appellate court reversed Maesten's conviction upon the ground of insufficiency of the evidence, holding (*id.*, p. 705) that the evidence raised at most a "mere suspicion."

The following language from the *Graziano* decision, summarizing still another case in point, could be applied almost verbatim to the present case: "In *People* v. *Draper* [1945] 69 Cal.App.2d 781 [160 P 2d 80], the facts are succinctly stated in paragraph 1 of the syllabus as follows: 'A verdict finding one defendant guilty of burglary was not sustained by evidence that prior to the crime he was riding in an automobile

with his codefendants, that he had an opportunity to participate in the commission of the crime, that he was found near the scene of the crime shortly after the burglary, that he ran when approached by police officers, and that he was not a truthful witness.' The facts are remarkably similar to the facts in this case, except that here the appellant did not flee, . . ." (*People* v. *Graziano, supra,* 83 Cal.App.2d 701 at p. 706.)

In *People* v. *Wilkins* (1956) 141 Cal.App 2d 557 [297 P.2d 42], the police spotted Wilkins driving near a pharmacy at night, with several passengers in his automobile. A man alighted from the automobile and inspected the pharmacy closely. The police lost the automobile, but came upon a burglary in progress at the pharmacy somewhat later. As an automobile was driven away, the officers chased and arrested two men who had been together at the scene. Burglary tools were found by a door of the pharmacy. One of the men arrested was Wilkins, the other was Grant. Both were convicted of the burglary and appealed.

Wilkin's appeal was dismissed. The appellate court reversed Grant's conviction, assessing the foregoing evidence with this language: "There was no evidence whatever of guilt. Of course there was probably ground for suspicion but that, as a matter of law, is not sufficient. The doctrine of reasonable doubt is still in effect." (Pp. 559-560.) The *Wilkins* court then quoted *People* v. *Draper, supra,* 69 Cal.App. 2d 781 at p. 786, as follows: " 'The . . . evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves that he was not a truthful witness. This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him. (Cases cited.)' " (P. 560.) The Supreme Court denied a hearing in the *Wilkins* case (*People* v. *Wilkins, supra,* 141 Cal.App.2d 557 at p. 560.)

In the present case, and despite Pierce's partially corroborative testimony, the jury was entitled to disbelieve appellant's account of his actions on the night of the burglary. ▊ But this did not relieve the People of proving him guilty: "A defendant, no matter how untrustworthy he may be, is not required to prove his innocence. The People must

prove him guilty." (*People* v. *Draper, supra,* 69 Cal.App.2d 781 at p. 785.)

The People might have done so if the prosecution had been able to show a fingerprint, a footprint, the presence of salt or sugar on appellant's shoes, or other evidence. In the absence of any such evidence, the People's case goes no further than to put appellant near the scene of the burglary on the night it occurred and in the company of a person who might have committed it. Under the decisions previously discussed, these factors will not support his conviction. They add up to strong suspicion: but suspicion, no matter how strong, is not substantial evidence which is necessary to support a conviction. (*People* v. *Draper, supra,* 69 Cal.App.2d 781 at p. 786. See Witkin, Cal. Criminal Procedure (1963) Appeal, § 685, pp. 668-669.)

Appellant also seeks reversal on the ground that the trial court abused its discretion in denying the motion for a continuance which he made when Benny Joe Freeman became ill before the date originally set for their joint trial. Because we reverse for insufficiency of the evidence, we do not reach this contention.

The judgment of conviction is reversed.

Devine, P. J., and Christian, J., concurred.