[Crim. No. 633.   Fourth Dist.   June 27, 1945.]

THE PEOPLE, Respondent, v. ELMER DRAPER,
Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Robert W. Kenny, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

MARKS, J.—This is an appeal from a judgment pronounced on defendant after he had been convicted of burglarizing three service stations in the city of Indio. He admitted the prior conviction of a felony. ▮▮▮ The sole question presented is the sufficiency of the evidence to support the verdict and judgment. The burglary of the service stations is established but Draper argues there is no sufficient evidence connecting him with the crimes.

The three stations are on Highway 99. The furthest east belongs to the Standard Oil Company. About one-half mile to the west is the station of the Valley Recap and Tire Company. About two blocks further west is the Elco Service Station. The three stations had been put in order and locked on the evening or night of September 25, 1944. They were broken open and entered some time shortly after twelve o'clock midnight, probably between two and two-thirty o'clock of September 26th. Nothing was taken from the Standard or Elco stations. One new tire, three recapped tires and several tire certificates were taken from the Valley Recap and Tire Company Station. The three recapped tires were returned by some undisclosed person a short time after the burglary and after Draper and his two traveling companions and codefendants, Thomas Bass and Ted George Daniels, had been arrested and confined in jail. The new tire and the certificates were never found. The recapped tires were probably found along Highway 99 about three quarters of a mile west of Indio.

Policeman Dan Lesley was patrolling the streets of Indio in a police car. He saw Daniels leaving the door of the Elco Service Station which was open. Lesley alighted from the car and asked Daniels what he was doing there, receiving the reply, ''I was in the rest room''. Lesley asked for his identification and Daniels ran down the street disappearing between some buildings. Lesley ran after him but abandoned the chase as he could not determine the direction Daniels had taken. Lesley then returned to the car, drove to the home of C. H. Cunningham, the chief of police, and the two returned to the Elco Service Station. Lesley alighted and saw a man who proved to be defendant Draper standing beside a building which Cunningham fixed at between 50 and 75 feet away. Lesley walked towards the man who started to run across the

street. Cunningham headed Draper off and placed him under arrest.

Daniels and Bass were arrested in Banning which is on Highway 99 west of Indio and were returned to the latter place. According to the testimony of Cunningham, Daniels made a complete confession of the three burglaries and implicated Draper as an active participant with him in the commission of the crimes. Neither Draper nor Bass were present during the conversations so these extrajudicial statements were admitted in evidence against Daniels alone. They were properly excluded as to Draper and Bass as they were hearsay as to them.

At the trial the three defendants denied any part in the burglaries. Daniels denied making the confession and maintained his innocence. The jury found Draper and Daniels guilty of the three burglaries but acquitted Bass. Draper alone appealed.

The story of the movements of the three men before their arrest is found almost entirely in what they severally told the arresting officers and their testimony while witnesses at the trial.

The three defendants lived in Los Angeles. Daniels owned some property there and was in business. Draper and Bass were war workers. Bass owned a light colored two-door 1941 Pontiac sedan. Daniels had some business to transact in Imperial Valley and hired Bass for $15 to drive him there. Draper went along for the ride.

The three left Los Angeles between four and five o'clock on the afternoon of September 25th. They reached Imperial Valley at an undetermined hour ending the trip in Calexico. They went into Mexico, bought and consumed some liquor, recrossed the border into the United States a few minutes before midnight. They secured the automobile from the lot where they had parked it, bought twelve gallons of gasoline and drove to the home of a Mrs. Brown where they remained about twenty minutes. They then started the return trip to Los Angeles with Daniels driving. He became sleepy and Bass took the wheel. He also became sleepy and Draper then took over. They were stopped by United States Immigration Officers at a road junction on Highway 99 eighteen miles east of Indio. One of the officers fixed the time at about twelve o'clock midnight, and not later than twelve-thirty.

Defendants all testified they had trouble with the car; that it was overheating; that it stopped and refused to start in

Indio. This is supported by the evidence of Officer Lesley who testified that he and Bass started the return from Banning to Indio in the Pontiac; that it did not work right so they had to leave it in a service station about two miles ease of Banning and make the rest of the trip in the police car with Cunningham and Daniels.

When Draper was interrogated at the police station in Indio he told the officers he had been hitch-hiking from El Centro to Los Angeles; that "two colored fellows" had let him out in Indio promising to return and pick him up; that they did not do so and he was hoping to get another ride when arrested as he was afraid they would not return; that he did not commit any of the burglaries and knew nothing about them. He described the Pontiac automobile sufficiently so that officers in Banning had no trouble in locating it but he gave no sufficient description of the two colored men who were riding in it.

When a witness at the trial he described the entire trip with the other men. He admitted he was driving the car when it was stopped by the immigration officers and testified that the engine stopped in Indio and that he could not start it again; that he got out of the car to look for a lavatory and went to the railroad tracks; that when he returned, Bass, Daniels and the Pontiac had disappeared.

The testimony of Bass and Daniels generally agreed with that of Draper as to the trip from Los Angeles to Mexicali and the return to Indio. Both agreed that Draper left the car at Indio and that they did not see him again until they were returned to the jail in that city. They also testified that Daniels alighted from the car and went across the street. Daniels testified that he asked a police officer with a police car to give the Pontiac a push so the engine would start but that the police officer declined saying there was something wrong with the bumper of his car. Bass finally started the engine of the Pontiac and they proceeded on their way to Banning where they were arrested. They testified that Daniels had business in Los Angeles and that Bass had to go to work which was the reason they continued the journey without waiting for the return of Draper.

As we have already observed Daniels told Officer Cunningham the details of the burglaries. As this evidence cannot be considered against Draper there is no need to detail it here except to point out that he told Cunningham that when Officer Lesley spoke to him as he was leaving the Elco Service Station, Draper was then inside. With the numerous other

unexplained features of the case against Draper it would not seem unreasonable to suppose that, after seeing the officer and the police car there, he would have gotten as far away from the service station as possible instead of waiting along the highway 50 or 75 feet from the scene of the crime, assuming he had broken into the station as claimed by Daniels.

Another unexplained feature of the case is how the three men could have been stopped eighteen miles east of Indio between twelve and twelve-thirty o'clock if they crossed the international border many miles away a few minutes before twelve and did not leave Calexico until about or shortly before twelve-thirty. It is very evident that none of the three defendants were entirely truthful when testifying in their own behalf. While this may have furnished sufficient reason for the jurors refusing to believe the testimony of any defendant, it did not relieve the People from the obligation of proving Draper guilty. ■ A defendant, no matter how untrustworthy he may be, is not required to prove his innocence. The People must prove him guilty. With these observations we must proceed to consider the sufficiency of the evidence against Draper.

■ The attorney general argues that while the evidence against Draper is entirely circumstantial it is sufficient to do more than point the finger of suspicion at him and proves his participation in the crimes. He summarizes this evidence as follows:

''(1) There is the fact that appellant and his co-defendants, with whom he drove to Indio, were found at the burglarized premises at the time or shortly after the burglary must have been committed. (2) There is the fact that during the period that the burglary must have been committed between midnight and 2:25 A.M., appellant and his co-defendants do not account for their time other than that they were driving to Indio from the place where they were stopped by the Border Patrol, a distance of only eighteen miles. (3) There is the fact that both appellant and his co-defendants ran and sought to elude the police officers when the latter appeared. (4) There is the fact that when apprehended appellant, although he made the entire trip from Los Angeles to Calexico and return with his co-defendants, told a story to the police of having hitch-hiked with strangers from El Centro and having been let out at Indio.'' (Numbers added.)

The statement numbered 1 is not entirely correct factually. Bass was not found there. Draper was 50 or 75 feet away

several minutes after the door of the service station was observed to be open. Daniels was the only one found on the premises. The fact that Draper was near the scene of the burglary might be a suspicious circumstance. On the other hand the fact that he was seen near the service station might support the inference that he knew nothing of the burglary as he claimed, as the time elapsing between the discovery of the burglary and his apprehension would have permitted him to have left the locality if he had participated in the crime.

The second circumstance relied upon might be explained by the fact that the Pontiac was not operating normally. If that reason be rejected then it is clear that the statements of Draper and his codefendants in that and other respects cannot be accepted as true. This last observation also applies to the story Draper told of his hitch-hiking from El Centro.

It is true that both Daniels and Draper ran when approached by police officers. They were not together and the fact that Daniels ran can have no bearing on the case against Draper.

■ In *People* v. *Goodwin,* 202 Cal. 527 [261 P. 1009], in discussing an instruction on the flight of a defendant, the Supreme Court quoted with approval the following from *People* v. *Jones,* 160 Cal. 358 [117 P. 176]; ''The instruction here given is typical. In the first place, it *omits the essential qualifications that where flight can be indicative of a guilty conscience the defendant must know that he is charged with the crime.''* If that quotation be considered applicable to the facts of this case little weight can be given to the fact that Draper ran when the officer approached him. However, it does seem to us that it should be considered as a suspicious circumstance against him. (See, *People* v. *Sanchez,* 35 Cal. App.2d 231 [95 P.2d 169].) In fact it seems to be the most suspicious circumstance established in the case.

■ The foregoing evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves that he was not a truthful witness. ■ This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him. (*People* v. *Robbins,* 171 Cal. 466 [154 P. 317]; *People* v. *Kempley.* 205 Cal. 441 [271 P. 478]; *People* v. *Davis,* 210 Cal. 540 [293 P. 32].)

The judgment against Elmer Draper is reversed and the case against him is remanded to the superior court for retrial.

Barnard, P. J., and Griffin, J., concurred.