Filed 8/25/14  P. v. Silva CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL ARMONDO SILVA et al.,<br><br>    Defendants and Appellants. | H038980<br>(Santa Clara County<br> Super. Ct. No. C1118941) |

A jury found appellant Gabriel Armondo Silva (Silva) and coappellant Jose Moreno (Moreno) each guilty of one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a), count one), and one count of concealing or withholding stolen property (§ 496, subd. (a)).[1]  Thereafter, Moreno admitted that he had served two prior prison terms within the meaning of section 667.5, subdivision (b).

Subsequently, on October 22, 2012, the trial court sentenced Silva to a total prison term of four years and Moreno to a total prison term of three years.  Both Silva and Moreno filed timely notices of appeal.

On appeal, Silva contends that the court abused its discretion in permitting the prosecutor to present evidence that approximately 12 years earlier he, Silva, had been found in possession of a stolen vehicle.  Similarly, Moreno argues that the trial court abused its discretion in permitting the prosecutor to present evidence that in 2007 he, Moreno, had been the subject of an investigation into mailbox theft and he had been

---

[1]     All unspecified section references are to the Penal Code.

found in possession of counterfeit driver's licenses.  Further, Moreno contends that the trial court gave conflicting and confusing instructions to the jury on how to consider the 2007 incident, in violation of both state law and the Fourteenth Amendment.  In addition, Moreno asserts that he was denied due process of law under both the California and federal Constitutions because the evidence was insufficient as a matter of law to establish his guilt of aiding and abetting a burglary.  Finally, Moreno joins in Silva's contention but presents no substantive argument.[2]  For reasons that follow, we reverse Moreno's conviction on count one.  As to Silva, we affirm the judgment.

*Evidence Adduced at Trial*

We are required to set forth the evidence in the light most favorable to the judgment.  (*People v. Valencia* (2002) 28 Cal.4th 1, 4, overruled in part on other grounds in *People v. Yarbrough* (2012) 54 Cal.4th 889, 894.)

*The Burglary*

On October 26, 2011, at approximately 3:30 p.m., San Jose Police Officer Jodi Williams met with Renee Madrigal and Ramon Corona at their residence on Oldham Way.  Officer Williams was responding to a reported burglary.  Madrigal and Corona lived in a garage that had been converted into a studio apartment.  Officer Williams saw that the locking mechanism for the door leading into the residence was broken and the door was damaged.  In the apartment, a large entertainment center spanned most of one wall.  A mirror near the entertainment center had smudges around the edges; Officer Williams dusted the mirror for fingerprints and submitted nine fingerprint cards for analysis.

Madrigal and Corona told Officer Williams that a flat screen television, a DVD player, some speakers, and some CD's were missing; they had a receipt with the serial

---

[2]  Silva's opening brief does not indicate that he is joining in any of Moreno's arguments.  However, by separate letter, Silva requested that he be allowed to join in all issues and arguments raised by Moreno that may accrue to his benefit.

number for the television. According to Officer Williams, Madrigal gave her information regarding the people that she suspected had committed the burglary. Madrigal gave her Silva's name and description and the description of a second person; this second person that Madrigal described was a white male, 27 to 31 years old with long blonde hair and a ponytail. Madrigal told Officer Williams that these two people could be found in the area of Senter Road and Capitol Expressway. Officer Williams showed Madrigal and Corona a photograph of an individual she thought might be one of the suspects they had described. Officer Williams conducted a follow-up investigation based on what Madrigal and Corona told her that day.

On October 30, 2011, Officer Williams went to a large parking lot behind a church at Capitol Avenue and Story Road; a trailer was parked there. The parking lot was five or six miles from where the burglary occurred. Officer Williams saw Moreno in the parking lot about 45 feet from the trailer. Moreno told Officer Williams that he had been staying in the trailer for about three months. He referred to a bedroom in the trailer as his and said that most of the property in the trailer belonged to him. Officer Williams found mail in the trailer that was in Moreno's name. Moreno's puppy was in the trailer. The trailer had no electrical hookup and no lights were on.

Officer Williams found Silva asleep on a makeshift bed near the kitchen area at the back of the trailer. In front of the bed Officer Williams found a television and a DVD player, but Officer Williams could not recall if they were connected to each other, or if they were plugged in. The DVD player matched the description of the player missing from the Oldham Way residence, except it had a different brand name than the one given to Officer Williams by Madrigal. However, a 42-inch flat screen television that was in the trailer had a serial number that matched the number on the receipt provided to Officer Williams by Madrigal. The television was in an elevated bedroom area at the front of the trailer. Officer Williams could not recall if this television was plugged in. There was a DVD player next to it, but again Officer Williams could not recall if it was connected to

3

the television.[3]  There was what appeared to be a DVD case in the trailer, but Officer Williams did not locate any DVD's.  Silva told Officer Williams that he had been staying in the trailer for three weeks.  Before that he had stayed at Little Orchard and Pastor Johnny's.  Silva did not mention that he had stayed with Madrigal and Corona.

Officer Williams testified that one person could probably carry the television and the DVD player, but not 45 to 60 DVD's and speakers as well.

Madrigal testified that she and her husband, Corona, had been living in the converted garage for about six months as of October 26, 2011.  Silva, who was Corona's friend, had stayed with them for about three weeks in August of 2011; he did not have keys to the home.  Madrigal said that she "made [her] husband throw him out."  Madrigal said that she and Corona had purchased a 42-inch flat screen television; they had a Curtis DVD player.  These items were in the residence when Silva stayed there along with speakers and DVD's.  Madrigal was not sure when the mirror was installed, but they had "barely just gotten [it]."

Madrigal told the jury that Silva came to her residence after he was asked to leave. She said he came twice.  On both occasions when Silva came to the residence he was with Moreno.  On the first occasion, about two weeks after Silva left, Madrigal was at the bus stop across the street when Silva appeared.  He did not go into the residence.  On the second occasion, about a week later, Madrigal was again at the bus stop when Silva and Moreno stopped by.  Other than these two occasions, Madrigal had never seen Moreno. She testified that neither Silva nor Moreno had permission to be in her home.

Madrigal said that on October 26, 2011, Corona left the residence early to go to work.  She left for an appointment sometime before 11:00 a.m.  She locked the door with a master lock and dead bolt.  When she left, the television and DVD player were still on the entertainment center, along with two speakers, which were on either side of the mirror

---

[3]      This DVD player did not match the description of the player missing from Oldham Way.

4

on a shelf, and about 45 to 60 DVD's. Madrigal could not recall if the mirror had been in the residence when Silva was there. However, Madrigal testified that Corona had cleaned the mirror when he put it in the entertainment center.

Madrigal said that she returned to the residence about 2:30 p.m. Immediately, she saw that the door was open and the locks were broken. She took a step inside the residence, but then stepped out again. She saw that her property was missing—the television, the DVD player, the speakers and the DVD's. The mirror had been moved from its place on the entertainment center and had dirty fingerprints on it. Madrigal ran to her landlord's house and called the police. No one went into the residence until the police arrived.

Madrigal testified that she told Officer Williams that she suspected Silva might be involved. She said she had seen Silva and Moreno together when Moreno drove Silva to her apartment; she knew that Silva was staying with Moreno. Neither Moreno nor Silva had permission to take anything from the apartment.

Madrigal's television and DVD player were returned about four days after the theft, once Officer Williams had located them. However, the other property was never returned. Madrigal identified her television and DVD player in photographs that Officer Williams had taken.

Madrigal admitted that she had been convicted of several felonies between 2000 and 2009, but stated that she had changed her life since then.

Of the fingerprints that Officer Williams collected from the mirror, two were from Silva. The remaining identifiable fingerprints were from Madrigal and Corona; none was from Moreno.

*Prior Acts Evidence*

Officer Norene Marinelli testified that on October 9, 1999, at about 11:00 p.m. she saw a Honda on Brokaw Road being driven without its headlights being turned on. After she notified dispatch of her intention to stop the vehicle, she learned that it had been

5

reported as being stolen.  After other officers arrived, Officer Marinelli stopped the Honda.  There were three people in the car, a male driver—identified as Silva— and two women.  Silva told Officer Marinelli that he did not have keys to the vehicle and that he and the two women were walking along the road when his friend James pulled up in the Honda and offered to let them borrow it.  Silva told her that he got into the Honda with the women and James left on foot.  Silva said he saw that there were no keys in the ignition and that the rear window was broken; he claimed not to know that the Honda was stolen.  A search of the Honda revealed three screwdrivers.

Agent Thang Bui, a United States Postal Inspector testified that on December 27, 2007, he was working on a case involving Moreno, who had been arrested with another suspect in connection with a key used to open mailboxes.  Moreno told Agent Bui that he had driven a friend to the apartment of his friend's mother to drop off a letter.  His friend came back to the car in a hurry and said no one was at home and that they should leave.  When Moreno was stopped by San Jose police, a counterfeit postal key was found in the car.  Moreno said he knew nothing about it and did not know where it came from.  When Agent Bui showed Moreno a text message on Moreno's cellular telephone asking where he could get some keys, Moreno said he was referring to keys for his mother.  Moreno had two driver's licenses belonging to other people, but with his photograph on them.  Moreno admitted that he had altered the driver's licenses, but said that he was "just messing around with it."  Moreno had a credit card convenience check and personal checks in the names of the owners of the driver's licenses.  He claimed that he had obsessive compulsive disorder and when he saw a bag of garbage next to a garbage can it "bothered him."  When he picked up the bag to put it into the can some papers fell out, including the two checks.  Agent Bui testified that the checks did not appear dirty.  One check was made out to Walmart for $1,100.

6

*Discussion*[4]

*Moreno's Issues*

*I. Admission of Evidence of Prior Acts*

Before trial the prosecutor moved the trial court to admit evidence of two prior incidents involving Moreno—the 2007 incident where Moreno was found in possession of counterfeit driver's licenses and a mailbox key, and a 2009 incident involving the theft of some rare coins. The prosecutor argued that the prior acts were probative of Moreno's knowledge that the items found in his possession were stolen. The prosecutor argued, in addition, that the similarities in methodology between the charged conduct and the prior bad act established a common plan, scheme, or design and were relevant to show absence of mistake or accident.

Moreno's counsel objected to the admission of any prior acts evidence. Defense counsel argued that the conduct alleged to have occurred in the current case, with which the prior 2007 offense was to be compared, was entirely the result of the prosecutor's speculation and was not grounded in any evidence. Defense counsel asserted that the prosecution's theory that his client provided the getaway car was not supported by any evidence brought out at the preliminary examination, nor was there anything in the police reports. Further, the dissimilarities between the two prior acts and the current incident could not support a common plan or scheme.

The court allowed the prosecutor to present evidence of the 2007 incident to show knowledge and the 2009 incident to show common plan or scheme and/or knowledge. The court found that neither incident was as inflammatory as a burglary and they were both recent and there was "a degree of similarity with other people in each one of them."

Later, the court revisited the issue of the prior acts evidence. Moreno's counsel asked the court to revisit the issue with respect to the 2009 incident. Moreno's counsel

---

[4] We discuss appellants' contentions in a different order than they have them designated in their opening briefs.

pointed out to the court that the introduction of such evidence would lead to a trial within a trial because it was a fairly complicated story in which the witnesses the prosecution intended to call would present only a small piece of evidence, requiring the defense to respond with other witnesses. Ultimately, on Evidence Code section 352 grounds the court ruled the 2009 incident could not come in because it would result in the "consumption of undue amount of time to litigate out or relitigate the issue[s] that were involved in that particular case." However, the court ruled that the 2007 incident could come in. The court stated that there were "similarities in that there are other participants involved that a theft underlies both of the factual context of these two cases, and there is an intent element that needs to be shown on the burglary or at least some active knowledge on the part of an aider and abettor. And I think that each of these [has] been carefully weighed by myself [*sic*] and I'm going to permit them to be utilized in front of the jury for that purpose and I will be giving a limiting instruction when that evidence comes in."

Accordingly, the prosecution presented evidence of Moreno's prior act as testified to by Agent Bui and outlined *ante*. Before Agent Bui testified, the court admonished the jury, "like last week, we had some evidence that was admitted for a very limited purpose. The evidence that Officer Bui . . . will be testifying to will refer to defendant Moreno. It's to be used not to show any kind of character disposition or bad character. It's only used to show in this case common plan, scheme or design, knowledge, or intent as it applies to the charges before this Court. You're going to be given instruction at the end of the case as to how this evidence is to be utilized."

After the close of evidence, the court instructed the jury pursuant to a modified version of CALCRIM No. 375 on the use of other crimes evidence. Specifically, the court instructed the jury: "The People have presented evidence that the defendant committed other offenses or acts that were not charged in this case. You may consider this evidence only if the People have proved by a preponderance of the evidence that the

8

defendant in fact committed the uncharged acts. [¶] Proving by a preponderance— proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. If you decide the defendant committed the uncharged acts, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant *acted with the intent to permanently deprive in this case*, *the defendant knew the property was stolen when he allegedly acted in this case*, *or the defendant had a plan to commit the offenses alleged in this case*. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged acts and the charged [offenses]. Do not consider this evidence for any other purpose except for the limited purpose given. [¶] Do not conclude from this evidence the defendant has bad character or is disposed to commit crime. If you conclude the defendant committed the uncharged acts, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove the defendant is guilty of burglary or receiving stolen property has been proved. The People still must prove each charge beyond a reasonable doubt." (Italics added.)

The prosecutor used the evidence of the 2007 incident to argue that Moreno aided and abetted the burglary: "This is just like in the 2007 [incident]. You heard Officer Bui testify this morning. . . . [¶] What was defendant Moreno doing in that car? He was a getaway driver then. He had the get-away. [¶] [Moreno] knew exactly what defendant Silva was going to do. He was providing him the assistance of being in the car that drove to remove that property and that is why they both are found with that property. . . . [¶] . . . [¶] Again, this goes back to the intent as you saw in the 2007 case. His intent there was to help his friend and him commit mail theft, and that's what he's doing here. His intent is to help defendant Silva to burglarize Renee and Ramon's home. Drove the car in that case. He had a fake key in his possession. He's found with checks in other

9

people's names. He had an intent there to help his friend and help himself to stolen property. [¶] It's the same intent he had here." Later, in rebuttal the prosecutor told the jury, "Basically the 2007 case shows that he had intent to aid his friend in committing that theft. He had knowledge that he had stolen property. It was a common scheme or plan, just like he was the getaway driver there assisting in mail theft, he's the getaway driver here assisting his friend with his car in committing this theft. That's what it's supposed to be used for and that is exactly what it proves."[5]

Moreno argues that the trial court abused its discretion in permitting the prosecutor to present evidence of the 2007 incident where he was found in possession of false driver's licenses and counterfeit checks.[6]

Evidence Code section 1101, subdivision (a) "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Thus, evidence of other crimes or acts is inadmissible when it is offered to show that a defendant had the criminal disposition or propensity to commit the crime charged. (Evid. Code, § 1101, subd. (a).)

Evidence Code section 1101, subdivision (b) "clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, *supra*, 7 Cal.4th at p. 393, fn. omitted.) Specifically, Evidence Code section 1101,

---

[5]     Although the prosecutor referred to Moreno's "intent" several times, it is plain that she was arguing that the 2007 incident could be used to show that Moreno was the driver of the car because he was the "getaway driver" in the 2007 incident. Essentially, the jury was told that because Moreno was the get-away driver in 2007, the jury could infer that he was the get-away driver in this case. In essence, the evidence was being used by the prosecutor to argue identity of the person that drove the vehicle used to move the stolen items.

[6]     It is important to note that Moreno does not challenge his conviction for concealing or withholding stolen property.

10

subdivision (b) provides that nothing in that section "prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

For evidence of uncharged conduct to be admissible under Evidence Code section 1101, subdivision (b) to prove such facts as motive, intent, identity, or common design or plan, the charged offenses and uncharged conduct must be "sufficiently similar to support a rational inference" of these material facts. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) "The least degree of similarity . . . is required in order to prove intent." (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The uncharged conduct need only be "sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same [or similar] intent in each instance." ' " (*Ibid.*; see *People v. Memro* (1995) 11 Cal.4th 786, 864-865 [defendant's uncharged conduct of possessing sexually explicit photographs of young males ranging from prepubescent to young adult admissible to show intent to sexually molest young boy].) "[T]he degree of similarity depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371; see also *People v. Scott* (2011) 52 Cal.4th 452, 470 [a higher degree of similarity is required to prove common plan, and the highest degree to prove identity].) "[T]he recurrence of a similar result tends to negate an innocent mental state and tends to establish the presence of the normal criminal intent. [Citations.]" (*People v. Jones*, *supra*, at p. 371.)

If the trial court determines that uncharged conduct is admissible under Evidence Code section 1101, subdivision(b), it must then determine whether the probative value of the evidence is " 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Ewoldt*, *supra*, 7 Cal.4th at p. 404; Evid. Code, § 352.)

We review the trial court's rulings under Evidence Code sections 1101 and 352 for an abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) We will not

11

disturb the trial court's exercise of discretion except upon a showing that it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

As this court has explained before, " '[e]vidence of uncharged offenses "is so prejudicial that its admission *requires extremely careful analysis*. [Citations.]" [Citations.]' [Citation.]" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 714-715.)

To establish the existence of a common scheme or plan, the prior and current crimes must be sufficiently similar, but they need not be distinctive or unusual. (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.) However, "[i]n order to be relevant as a common design or plan, 'evidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 111.)

In other words, "[t]o establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. For example, evidence that a search of the residence of a person suspected of rape produced a written plan to invite the victim to his residence and, once alone, to force her to engage in sexual intercourse would be highly relevant even if the plan lacked originality. In the same manner, evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.)

" '[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.' " (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.) As noted, "[t]o

12

establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Ewoldt*, *supra*, at 7 Cal.4th p. 403.)

In the instant case, the uncharged 2007 incident in which Moreno was found in possession of forged documents and a counterfeit mailbox key bears no similarity to the burglary in this case. While it is arguable the 2007 incident may have been admissible on other issues, such as knowledge or intent, it should not have been admitted on the theory that it showed a common scheme or plan to commit burglary—which is exactly how the court instructed the jury to consider the evidence. This case underscores the importance of carefully tailoring the exceptions of Evidence Code section 1101, subdivision (b), to the particular issues presented at trial. The trial court found that the two events were similar because "there are other participants involved, [and] a theft underlies both of the factual context of these two cases . . . ."[7] Innumerable crimes, indeed innumerable burglaries, are committed in concert by two men; that single mark completely fails to set the charged and uncharged offenses apart from other crimes of the same general variety. (See *People v. Felix* (1993) 14 Cal.App.4th 997, 1005.) "Evidence of prior offenses is not admissible simply as character evidence, i.e., to show a propensity to commit crimes in general or a *particular class of crimes*. [Citations.]" (*Id.* at pp. 1004-1005, italics added.)[8] A propensity to commit theft offenses is precisely the kind of character trait that may not be proven under Evidence Code section 1101.

In sum, we conclude that the trial court abused its discretion in allowing the prosecutor to present evidence of the 2007 incident to show that Moreno "had a plan to

---

[7] The court found the circumstances and facts were similar and "there [are] certain behavioral features about the defendant [Moreno] that are probative to the matters of proof in this particular case." It appears to this court that the lower court's explanation bordered on finding that Moreno had a propensity to commit crimes.

[8] The exceptions are when sexual offenses (Evid. Code, § 1108) or domestic violence offenses are involved. (*Id*., § 1109.)

13

commit the offenses alleged in this case." We need not engage in a prejudice analysis because, as we shall explain, we are required to reverse Moreno's burglary conviction for insufficient evidence.

## II. Insufficient Evidence that Moreno Aided and Abetted a Burglary

Moreno contends that there was insufficient evidence that he aided and abetted the burglary. He argues that the prosecutor failed to prove the mental state requirement of aiding and abetting a burglary beyond a reasonable doubt.

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.]' " (*People v*. *Castaneda* (2011) 51 Cal.4th 1292, 1322.)[9]

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v*. *Young* (2005) 34 Cal.4th 1149, 1181.)

Moreno presents the question as a lack of substantial evidence; however, his argument is that the undisputed evidence is insufficient as a matter of law to support his burglary conviction. The legal sufficiency of undisputed evidence to support a

---

[9] This is the standard under the due process clause of the Fourteenth Amendment. (*Jackson v*. *Virginia* (1979) 443 U.S. 307, 319.)

14

conviction is a question of law, which we review de novo. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 315, fn. 3; *People v. Groat* (1993) 19 Cal.App.4th 1228, 1231.)

Moreno asserts that in this case the prosecutor was required to prove that he, with full knowledge of Silva's specific unlawful purpose, intended to facilitate or encourage the burglary; and that his intent to aid the burglary was formed before the burglary was completed. We do not disagree and the trial court so instructed the jury.[10]

However, Moreno asserts that there was insufficient evidence of the required mental state and relevant conduct for aiding and abetting liability. He argues that "[n]o direct evidence was presented that [he] was aware of Silva's plan or that he intended to assist the burglary; no witnesses describing conversations with [him] about the burglary; no cell phone records referencing the burglary; and no writings reflecting the burglary. As proof of knowledge and intent, the prosecution relied on two facts: [his] 2007 offense and the fact that [he] and Silva were co-habitants."

"Whether a person has aided and abetted in the commission of a crime ordinarily is a question of fact. [Citations.] Consequently, ' "all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it." ' [Citation.]" (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094 (*Lynette G.*).)

In order to hold Moreno as an aider and abettor it must be determined whether he, in any way, directly or indirectly, aided the perpetrator, with knowledge of the latter's wrongful purpose. (*Lynette G.*, *supra*, 54 Cal.App.3d at p. 1094.)

---

[10] We note that the trial court instructed the jury that a person may be guilty of a crime either as the perpetrator or as an aider and abettor. Furthermore, the trial court told the jury to prove Moreno guilty of a crime based on aiding and abetting that crime, the People had to prove that the perpetrator committed the crime, and Moreno knew that the perpetrator intended to commit the crime and before or during the commission of the crime Moreno intended to aid and abet the perpetrator and Moreno did in fact aid and abet the perpetrator.

Evidence of the intent required for aiding and abetting may be established by circumstantial evidence. (*People v. Beeman* (1984) 35 Cal.3d 547, 558-559.) "Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.) Whether a defendant aided and abetted may be inferred from his presence at the scene of the crime, companionship, and conduct before and after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (Campbell).) Although proof of only one of these factors, standing alone, may be insufficient to establish the defendant aided and abetted the commission of a charged offense (see *Ibid.* [presence or prevention]; *People v. Abilez* (2007) 41 Cal.4th 472, 521 [flight]), in combination these factors can certainly constitute sufficient evidence to support such a finding.

It must be remembered that it is unnecessary for the primary actor to expressly communicate his criminal purpose to the defendant, as that purpose may be apparent from the circumstances. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531-532.)

In *Campbell*, *supra*, 25 Cal.App.4th 402, this court upheld convictions of attempted robbery and attempted murder because the aider and abettor "knew . . . and shared [the principal's] intent to rob [the victim] and that in a supportive role, he affirmatively facilitated [the principal]." (*Id.* at p. 410.) The aider and abettor in *Campbell* was seen with the perpetrator, both before and during the crime, and assumed a position in front of the victims "to intimidate and block them, divert suspicion, and watch out for others who might approach." We concluded that "[s]uch conduct is a textbook example of aiding and abetting." (*Id.* at p. 409.) Plainly, this case is distinguishable from *Campbell*.

Under section 459, the crime of burglary is committed when a person "enters any . . . building . . . with intent to commit grand or petit larceny or any felony . . . ." (See also § 460 [burglary is of the first degree when the building is an inhabited structure].)

16

"Because section 31[11] defines as principals all who directly commit a given offense or who aid and abet in its commission, the same criminal liability attaches whether a defendant directly perpetrates the offense or aids and abets the perpetrator." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1038-1039 (*Montoya*), italics omitted.)

Here the evidence showed that Moreno and Silva were seen together outside Madrigal's residence on at least one occasion sometime before the burglary.[12] It was Moreno that drove Silva to Madrigal's residence on this occasion. Some of the stolen items were found in the trailer where Moreno and Silva were both living. This trailer was five to six miles away from Madrigal's and Corona's residence, raising the inference that Silva needed a car to move the items.

We are mindful that "[w]hen, as here, a defendant is found in possession of property stolen in a burglary shortly after the burglary occurred, the corroborating evidence of the defendant's acts, conduct, or declarations tending to show his guilt need only be slight to sustain the burglary convictions. [Citations.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 176.) "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d.748, 754.) Here, however, no evidence

---

11    Section 31 provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed."

12    Initially, Madrigal testified that she had seen Moreno twice outside her house. However, when Madrigal was presented with her preliminary hearing testimony wherein she testified that Moreno had been to her house "one time and one time only," Madrigal explained that she counted the time "when they had stolen the stuff" as the second time he had been at her house. The court struck the answer and told the jury to ignore it. In addition, when defense counsel asked her if she had told Officer Williams that she had seen Moreno outside her house, Madrigal said that she "assumed" that Moreno had to bring Silva over "because he was staying with him."

placed Moreno at the scene of the crime at the time that Silva took the property, let alone evidence showing that he entered the property. To draw the conclusion that Moreno must have been the driver of the vehicle that Silva used to move the stolen items takes us from the realm of reasonable inferences into the land of pure speculation. Substantial evidence must be of ponderable legal significance and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Evidence that raises only a suspicion of guilt is not sufficient to be deemed substantial evidence. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

The prosecution's theory of the case was that because Moreno was the getaway driver in 2007, he was the getaway driver in this case.[13] In addition, the prosecutor told the jury that Moreno "must have known defendant Silva was going to commit that crime. The trailer where the property was stolen, guess who was staying there. Guess whose puppy was there. Guess whose mail was there. All of them belong to defendant Moreno."

A defendant charged with burglary cannot be held liable as an aider and abettor if he formed the intent to commit, encourage or facilitate the commission of the offense *after* the perpetrator's final departure from the burglarized structure. (*Montoya, supra,* 7 Cal.4th at p. 1046.) As the court instructed the jury, "[t]o be guilty of burglary as an aider and abettor, [Moreno] must have known of the perpetrator's unlawful purpose and must have formed the intent to aid, facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure." The evidence that Moreno did so could only have come from four pieces of evidence that

---

[13]     Asportation (or carrying away) of stolen property is not an element of the crime of burglary. (*Montoya, supra,* 7 Cal.4th at p. 1041.) Thus, liability for aiding and abetting a burglary "[does] *not* extend to a person who simply aided a burglar in the asportation of the stolen property *after* its removal from the burgled structure." (*Ibid.*, second italics added.) Here, the prosecutor's theory—that Moreno could be held liable for aiding and abetting the burglary because he was the "getaway driver"—was legally incorrect unless Moreno formed the intent to aid and abet the burglary before Silva left the victims' residence.

18

were undisputed—he lived with Silva, he had a vehicle and drove a car in 2007 in which certain stolen items were found, he was seen sometime before the burglary driving Silva to or past the victims' residence, and he was found in possession of some of the stolen items.

"Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Although the jury may consider the circumstance that a defendant possessed stolen property to connect him or her to the burglary, "mere possession of stolen property is not sufficient to connect a defendant with the perpetration of the burglary in which the property was taken" without "other evidence." (*People v. Russell* (1932) 120 Cal.App. 622, 625.) Circumstances that have been held sufficient corroborative evidence when coupled with possession include (a) flight; (b) false statements showing consciousness of guilt; (c) false statements as to how the property came into defendant's possession; (d) assuming a false name and an inability to find the person from whom defendant claimed to have received the property; (e) sale of the property under a false name and at an inadequate price; (f) sale of the property with marks of identity removed and failure to account for its possession; (g) giving false testimony; and (h) an effort to throw away the stolen property. (*Ibid*.) None of these circumstances are present in this case.

"[E]vidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him." (*People v. Draper* (1945) 69 Cal.App.2d 781, 786.) Speculation and conjecture are not the equivalent of substantial evidence. (*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1584-1585 (*Louis & Diederich*).) Nor is the absence of evidence equivalent to substantial evidence. (*Roddenberry v.*

19

*Roddenberry* (1996) 44 Cal.App.4th 634, 655.) "A theoretical possibility is not the equivalent of substantial evidence." (*Id*. at p. 646.)

In *Draper*, *supra*, 69 Cal.App.2d 781, the defendant had been riding in an automobile with his codefendants prior to the crime, he could not account for his time other than stating he was driving with his codefendants to Indio, he ran away in order to avoid the police, he was found near the scene of the crime shortly after the burglary, and he was not a truthful witness. (*Id*. at pp. 783-784.) The *Draper* court concluded, "[t]he foregoing evidence points the finger of suspicion at Draper, shows that he had an opportunity to participate in the commission of the crimes and proves he was not a truthful witness. This is not sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him." (*Id*. at p. 786.)

When we review the evidence in this case that is in addition to Moreno's possession of the stolen property, we find that it amounts to only a possibility that Moreno aided and abetted the burglary by driving Silva to and from the victims' residence, which does not constitute substantial evidence, beyond a reasonable doubt, that he aided and abetted the burglary. The evidence that Moreno was the "get-away driver" in the 2007 incident cannot be used as a circumstance establishing that he drove Silva to and from the victims' residence.[14] The court instructed the jury that the 2007 incident evidence could be used only as a circumstance establishing that Moreno acted with the intent to permanently deprive—an element of theft, and Moreno knew the property was stolen—an element of possession of stolen property. Although the court instructed the

---

[14]    To draw the conclusion that because Moreno was the driver in the 2007 incident he was the driver in this incident and had formed the intent to aid and abet the burglary before the burglary was completed is to use the prior crimes evidence as propensity evidence. We would be using the prior criminal act against Moreno to prove his conduct on a specified occasion. Evidence Code section 1101, subdivision (a) prohibits such use.

jury that the 2007 incident could be used to establish that Moreno had a plan to commit the offenses alleged in this case, as we explained *ante*, the trial court erred in so doing.

Evidence Code section 600, subdivision (b) provides: "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." The facts that Moreno had a car and had driven Silva to or past the victims' residence in the past and lived with Silva do not logically give rise to the inference that he drove Silva to and from the victims' residence on the day of the burglary.[15] As stated in *Louis & Diederich*, *supra*, 189 Cal.App.3d 1574, "An inference must be the product of logic and reason. It must rest on the evidence, on probability rather than on *speculative possibility or conjecture*." (*Id*. at pp. 1584-1585, italics added.) Those tests were not satisfied here. Evidence that Moreno and Silva lived in the same trailer may have ruled out any contrary claim by the defense, but it did little to meet the prosecution's affirmative burden of proof beyond a reasonable doubt. The inference to be drawn, that because defendants lived together they likely committed the charged crime together, was weak and remote. In limited situations, guilt requires proof of association with others who commit crimes. (See § 186.22, subd. (a) [enhancement for active participation in criminal street gang]; CALCRIM No. 1400 [elements include knowledge that members of the gang have engaged in a pattern of criminal gang activity].) In general, however, care must be taken to avoid convicting a defendant through guilt by association. "Guilt by association is a thoroughly discredited doctrine . . . ." (*People v. Chambers* (1964) 231 Cal.App.2d 23, 28.)

In sum, disregarding the improperly admitted evidence of the 2007 incident for a plan to commit the offenses alleged in this case, on the remaining evidence, no rational

---

[15] Silva could just as easily have borrowed Moreno's vehicle and used it to move the property by himself. When there are two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, we must accept the one that points to innocence.

jury could conclude beyond a reasonable doubt that Moreno aided and abetted Silva in committing the burglary.[16] Accordingly, we must reverse Moreno's conviction on count one.

*III. Alleged Instructional Error*

Moreno contends that the trial court's instructions on the use of the other-crimes evidence were conflicting and confusing and violated his right to due process.[17] Although we must reverse Moreno's conviction for burglary, we will address this issue because Silva has requested to join in Moreno's argument; we address this issue as if Silva had raised it himself.

Silva's counsel did not object to the instructions as given nor did she ask that the instructions be modified or clarified. Accordingly, respondent argues that this issue has been forfeited because no objection to the court's instructions was made below and there was no request for any clarification or amplification. Silva's position is that no objection is required below because his " 'substantial rights' " were affected.

" 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) However, we may "review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby" (§ 1259.) " 'Ascertaining whether claimed instructional error affected the substantial rights of the defendant

---

[16] In a situation where defense counsel has strenuously objected to the admission of certain evidence, inadmissible evidence and matters not in evidence cannot be considered in determining whether a judgment is supported by the evidence. (*People v. Lewis* (2008) 43 Cal.4th 415, 507-509, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919.)

[17] Again, Moreno's argument (and by extension Silva's argument) is limited to only the burglary count.

necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)

Our Supreme Court has explained: " '[w]hen we review challenges to a jury instruction as being incorrect or incomplete, we evaluate the instructions given as a whole and not in isolation. [Citation.]' " (*People v. Moore* (2011) 51 Cal.4th 1104, 1140.) Generally, we ask whether there is any reasonable likelihood the jury was confused and misapplied the instructions. (*People v. Bland* (2002) 28 Cal.4th 313, 332; *People v. Harrison* (2005) 35 Cal.4th 208, 252; *People v. Kelly* (1992) 1 Cal.4th 495, 525.)

" ' "[M]isdirection of the jury, including incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error are reviewed under the harmless error standard articulated" in *Watson*.' [Citations.] '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' [Citation.]" (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)

Even if we assume for the sake of argument that the trial court's instructions on the use of the other-crimes evidence were conflicting and confusing, as to Silva, it is not reasonably probable that a result more favorable to Silva would have obtained absent the assumed error.[18] (*People v. Watson* (1956) 46 Cal.2d 818, 837.) Silva's fingerprints were found on a mirror that had been moved to facilitate the removal of items that were later found in the trailer in which he was staying. According to Madrigal, the mirror was not present in the apartment when Silva was staying there; and she was sure that the mirror was clean when she left the residence on the morning of the burglary.

---

[18] In *Beltran*, *supra*, 56 Cal.4th at page 955, our Supreme Court rejected the argument that any ambiguity introduced into instructions deprives a defendant of his federal constitutional rights to due process. Silva is required to show the trial court committed an error violating the federal Constitution or constituting a fundamental structural defect for a more stringent standard of prejudicial error to apply.

The presence of Silva's fingerprints on the mirror and Silva's possession of the stolen property convinces us that it is not reasonably probable that a result more favorable to Silva would have resulted absent the assumed error.

*Silva's Contention*

*IV. Admission of Evidence that in 1999 Silva was Found in Possession of a Stolen Car*

The prosecution moved the trial court to admit evidence that Silva had been found in possession of a stolen vehicle on three separate occasions in 1998 and 1999. The prosecutor asked that Silva's prior acts be admitted to show knowledge, intent, and the absence of mistake. After listening to argument, the court ruled that the evidence could come in. The court stated that it recognized "the theory of admission outlined by the People, lack or the absence of mistake or accident" and "intent and knowledge." The court found that the knowledge factor predominated. The court went on to say, "The similarity on these particular cases is not that great in terms of facts; however, in terms of explanations of stolen property and possession of it, it is, as far as the court is concerned, to be quite similar in terms of the 352 arguments. The one ground that I can absolutely understand from the defense point of view is the recency of these particular items. They're fairly old. They are 12 and 13 years old or 13 and 14 years old in comparison to the incident that we're looking at right now. However, I'm finding that they all be admissible against the defendant to show knowledge. And I'm finding based on the fact that this is a set of facts that are not inherently inflammatory. They are, as pointed out by the People, less packed with potential for inflaming a jury than another burglary." Thus, over objection by Silva's counsel, the trial court allowed the prosecution to present such evidence. However, the prosecution introduced evidence of only one prior bad act as testified to by Officer Marinelli and set forth *ante*.

Before Officer Marinelli testified, the trial court told the jury, "It is an act that is limited only for Mr. Silva's knowledge, common plan, scheme, or design or intent, and I will instruct you at the end of the trial on this particular—the use of this particular

24

evidence. So the Court has limited it. It's limited to that particular item of proof and, secondly, to this defendant, Mr. Silva." Briefly, the trial court explained the difference in the burden of proof regarding the prior act and stated, "It does not refer to any bad character or propensity. It's just very narrowly limited to what I've indicated."

Subsequently, the court and parties revisited the issue after the prosecutor told the court that she wanted to show the convictions for the prior acts to lessen the jury's need to punish the defendants for those prior acts. The court ruled that evidence of the convictions could not come in.

Silva argues that the trial court abused its discretion in permitting the prosecutor to present evidence that in 1999 he had been found in possession of a stolen car. He argues that the evidence concerning the stolen car possession bore no similarity to this case and therefore lacked sufficient probative value. Further, there was substantial danger of undue prejudice or confusion of the issues, and it likely misled the jury.

Silva contends that the evidence that he was found in possession of a stolen car in 1999 was dissimilar to the current crime and was irrelevant to show knowledge, intent, or common plan. He asserts that absent any similarity the prior crimes evidence could be used only as propensity evidence and was highly prejudicial.

We agree that the evidence that Silva had been found in possession of a stolen car in 1999 was erroneously admitted. As the trial court acknowledged, the similarity between the 1999 incident and the charged offenses was not great and the 1999 incident was "fairly old." The court found that the evidence was admissible against Silva to show that he had knowledge that the property in this case was stolen. Thus, the factual issue was whether Silva had knowledge that the television and DVD player in the trailer were stolen; the admissibility of the evidence that Silva was found driving a stolen car in 1999 required a showing that Silva's experience in driving a stolen car would have provided him with the knowledge that the television and DVD player found in the trailer had to have been stolen. Here, the 1999 incident and the current charges are not sufficiently

25

similar to support that inference. As Silva points out, "[t]he evidence of the stolen nature of the car was glaringly obvious—missing keys, broken window, and presence of screwdrivers. No such similar evidence existed regarding the condition of the television and the DVD player that would suggest to anyone that the items had been stolen."

Nevertheless, the error does not require that we reverse the judgment. If we disregard the evidence that Silva was found in possession of a stolen car in 1999, there would still be more than enough evidence to support Silva's convictions. As noted *ante*, Silva's fingerprints were found on a mirror that had been moved to facilitate the removal of items that were later found in the trailer in which he was staying. According to Madrigal, the mirror was not present in the apartment when Silva was staying there; and she was sure that the mirror was clean when she left the residence on the morning of the burglary. The presence of Silva's fingerprints on the mirror and Silva's possession of the stolen property convince us that it is not reasonably probable that a result more favorable to Silva would have resulted had the 1999 stolen car evidence not been admitted. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) For the same reasons, any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1120, fn. 23.)

*Disposition*

The judgment as to Silva is affirmed. The judgment as to Moreno is reversed, and the matter is remanded with directions to strike the burglary count and resentence.[19]

---

[19] In sentencing Moreno, the court imposed but stayed a two-year prison term on count two—concealing or withholding stolen property.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P.J.



_____

PREMO, J.